**Richard G. ELLIS, Plaintiff,**

v.

**MOBIL OIL CORPORATION, a New York corporation; Union Oil Company of California, a California corporation, Defendants.**

**No. CIV 87–1997 PHX CLH.**

United States District Court, D. Arizona.

March 16, 1989.

Ronald W. Meyer, Phoenix, Ariz., for plaintiff.

N. Warner Lee, Phoenix, Ariz., for defendants.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Plaintiff Richard G. Ellis ("Ellis") operates a service station under a franchise agreement with defendant Mobil Oil Corporation ("Mobil"). Mobil and Union Oil Company of California ("Unocal") agreed to trade several service stations, and assigned a specific value to each station. El-

lis's station (one of the properties to be traded) was valued at $581,000. Ellis was given a right of first refusal to purchase the property, as set forth in the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2802(b)(3)(D)(iii) (1982). Ellis declined to pay the amount set and brought suit against the two oil companies, alleging that he did not receive a bona fide offer and that the defendants engaged in a conspiracy to set the price on the property much higher than fair market value. The defendants have moved for summary judgment on the two counts of Ellis's complaint, contending that there was no conspiracy and that the PMPA does not require Mobil to make a bona fide offer at fair market value in this situation.

*Background*

Ellis is a Mobil dealer who has operated a Mobil service station in Willcox, Arizona, under a franchise agreement with Mobil since about 1969. Apparently in response to inquiries from Ellis regarding his purchasing the property, Mobil had the property appraised in November 1985. The appraised value was $162,000. In July 1986 Ellis made an offer to purchase the property for $210,000. When Mobil rejected this offer, he made a second offer for $285,000 in August 1986. Mobil considered this offer seriously, and an internal memo suggests that at least one of their people thought that they could not do any better. Moreover, May 1987 advisory report on the Willcox station indicated a value of less than $100,000, although the report emphasizes that it is not a market value appraisal.

However, in late 1986 or early 1987 Mobil began negotiating with Unocal regarding the prospect of trading some of their service stations for some of Unocal's. Unocal identified six stations in Florida that it wished to give up, and determined that the value of these properties was $3,829,000. Mobil searched for service stations acceptable to Unocal, and eventually the companies settled on eight stations. Seven of these were in Marin County, California; the eighth was Ellis's station in Willcox. Unocal had the California properties formally appraised, but its Arizona appraiser was unavailable, so Unocal evaluated the Willcox station "in-house."

Mobil's evaluation of the adequacy of the value package had assigned a value of $300,000 to the Willcox station, and values of $106,000 to $150,000 for three of the California stations that were leaseholds rather than fee estates. However, Unocal assigned Willcox a value of $581,000, and gave the three leaseholds no value at all. The defendants assert that the leaseholds had no value to Unocal, but were assumed merely as an accommodation to Mobil, which wished to withdraw from the Marin County market.

Defendants also assert that Mobil had nothing at all to do with Unocal's assignment of value. The Willcox appraisal was apparently made by Unocal's Western Marketing and Real Estate Manager, who negotiated the exchange agreement for Unocal. Defendants assert that he had no access to the values Mobil had placed on any of the properties.

In July 1987 defendants entered into an exchange agreement. Defendants assert that the party receiving each property assigned it a value, and that this value was used as the basis for the exchange agreement.

In September 1987 Ellis was given a notice of nonrenewal of his franchise and soon thereafter was given a right of first refusal to purchase the premises for $581,000. He declined to pay this amount and brought suit against the defendant, arguing (1) that defendants had violated the PMPA by arbitrarily and capriciously assigning a value of $581,000 to the property, in that the right of first refusal was not bona fide or made in good faith and was not for the fair market value of the property; and (2) that defendants had conspired to set a high value on the property and thus deprive him of the right to purchase the property for fair market value.

*Discussion*

Congress enacted the PMPA "to combat the severe imbalance in bargaining power that existed between petroleum franchisors and franchisees." *Brownstein v. Arco Petroleum Products Co.*, 604 F.Supp. 312,

**1096**

314 (E.D.Pa.1985). The Act prohibits an oil company from terminating any service station franchise except on the basis of specifically enumerated grounds. 15 U.S.C. § 2802. An oil company desiring to sell service station premises leased to a franchisee must either:

> (I) [Make] a bona fide offer to sell, transfer or assign to the franchisee such franchisor's interest in such premises; or
>
> (II) If applicable, [offer] the franchisee a right of first refusal or at least 45–days duration of an offer, made by another, to purchase such franchisor's interest in such premises.

15 U.S.C. § 2802(b)(3)(D)(iii). As remedial legislation, the PMPA must be liberally construed, consistent with its goal of protecting franchisees, but it must not be interpreted inconsistently with its plain language and outside its logical boundaries. *Humboldt Oil Co. v. Exxon Co., USA*, 695 F.2d 386, 389 (9th Cir.1982).

Congress made no explicit provision for situations like this case, where two oil companies exchange a number of properties upon which franchisees are operating service stations. One of the definitions of "purchase" in Webster's dictionary is "to acquire (real estate) by means other than descent or inheritance." *Webster's Third New International Dictionary* 1844 (1976). An exchange of property would fit within this definition. However, to equate "purchase" with "exchange" would be to step outside the logical boundaries of the PMPA.

▮ A right of first refusal "requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption on terms identical to those the owner has received from another." *Ollie v. Rainbolt*, 669 P.2d 275, 279 (Okla.1983). If every parcel of real estate is deemed to be unique, *see Newnham v. United States*, 813 F.2d 1384, 1386 (9th Cir.1987), a person holding a right of first refusal cannot possibly offer to acquire the property on terms identical to those the owner has received from another who has proposed an exchange of property. Con-

struing the PMPA consistent with its goal of protecting franchisees leads to the conclusion that Subsection II is simply inapplicable to an exchange of service station properties. To effectuate the exchange with Unocal in compliance with the PMPA, Mobil was required to make a bona fide offer to sell the service station property to Ellis. A bona fide offer to sell would be at a price that approaches fair market value. *See Slatky v. Amoco Oil Co.*, 830 F.2d 476, 485 (3rd Cir.1987) (en banc); *see also Tobias v. Shell Oil Co.*, 782 F.2d 1172, 1174 (4th Cir.1986); *Gooley v. Mobil Oil Corp.*, 678 F.Supp. 939, 941 (D.Mass.1987), *aff'd*, 851 F.2d 513 (1st Cir.1988) ("To be bona fide, an offer must be issued in conformance with the offeror's general practice for selling property and the purchase price must 'meet or very nearly approach' the fair market value of the fully operative leased station.").

IT IS ORDERED as follows:

1. The defendants' motion for summary judgment is denied.

2. Partial summary judgment is to be entered in favor of plaintiff, declaring that he was entitled to a bona fide offer by Mobil to sell the property.

3. The only remaining issue for trial is what would be a bona fide offer.