Argued and submitted May 8, affirmed September 6, 1989, reconsideration allowed by
opinion January 17, 1990
See 100 Or App 219 (1990)

WIRKKULA,
dba Jim's Union Service, Inc.,
*Respondent,*

*v.*

UNION OIL COMPANY OF CALIFORNIA,
dba Unocal,
*Appellant.*

(CC87-2196; CA A50199)

780 P2d 223

Barry L. Adamson, Portland, argued the cause for appellant. On the briefs were Michael D. Williams and Williams, Fredrickson, Stark & Weisensee, P.C., Portland.

Mark A. La Mantía, Portland, argued the cause for respondent. With him on the brief was Shannon and Johnson, P.C., Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

### GRABER, P. J.

Defendant Union Oil Company of California (Unocal) appeals a judgment that declared that its non-renewal of plaintiff's lease of a Unocal service station in Astoria was wrongful, because Unocal did not comply with the requirements of the lease or of the federal Petroleum Marketing Practices Act (PMPA) when it notified plaintiff of the nonrenewal. We affirm.

The trial court decided the case on cross-motions for summary judgment. There is no dispute about the controlling facts. Unocal either owns or leases from a third person the property on which the station stands. Plaintiff has operated the station for many years under a series of three-year leases from Unocal; the latest expired on January 31, 1987. Paragraph 1 of that lease provides, in pertinent part:

> "*The Lease* ends automatically and without notice on the expiration date. Lessee's *tenancy* at the Station shall be renewed by Union at the expiration date, unless this Lease has been terminated prior to the expiration date, pursuant to the provisions of Paragraph 10, 11, or 12, *or Union elects not to renew this Lease pursuant to Paragraph 10.*" (Emphasis supplied.)

The relevant portions of paragraph 10 provide:

> "(e) * * * Union is not obligated to *renew this Lease:*
>
> "(1) if Union and Lessee fail to agree to changes or additions to this Lease made by Union in good faith, and in the normal course of business, and Union does not insist on such changes or additions being made for the purpose of preventing the renewal of this Lease * * *.
>
> "* * * * *
>
> "Union's written notice of termination or nonrenewal* * * shall include a statement that *this Lease* is being terminated or not renewed and shall set forth the reason or reasons for termination or nonrenewal. The effective date of the termination or nonrenewal shall be at least 90 days after the date of notice of termination or nonrenewal * * *." (Emphasis supplied.)

Unocal's first contact with plaintiff about renewing the lease occurred on January 15, 1987, 16 days before the expiration of the old lease, when Unocal sent plaintiff a proposed renewal lease. Plaintiff did not execute the renewal. The

next contact was on March 6, 1987, when Unocal again asked plaintiff to execute the renewal lease and warned that, if he failed to do so, Unocal would issue a notice of nonrenewal. Unocal thereafter purported to extend the lease for two periods of 30 days each to permit negotiations with plaintiff's attorney. Plaintiff continued to refuse to execute the proposed lease. On July 23, 1987, two months after the expiration of the second extension, Unocal sent plaintiff a notice of non-renewal, effective November 2, 1987. Plaintiff filed this action in October, 1987. The parties agreed to maintain the *status quo* pending the outcome.

The trial court held that both the lease and PMPA required Unocal to give plaintiff notice of nonrenewal at least 90 days before the expiration of the old lease and that, because Unocal had not done that, its later notice of nonrenewal was wrongful. It also held that, as the result of the failure to give 90 days' notice of nonrenewal, the lease was automatically renewed for another three-year term. The court then entered a judgment that declared only that the nonrenewal was wrongful. The judgment did not award damages, order Unocal to do anything, or otherwise give direct effect to the court's conclusion that the lease was automatically renewed.[1]

■        The first issue is whether the notice of nonrenewal was timely under PMPA and the lease. We look first at PMPA, 15 USC §§ 2801 - 2806. 15 USC § 2804(a)(2) requires a franchisor to notify a franchisee of the nonrenewal of the franchise relationship[2] "not less than 90 days prior to the date

---

[1] In the prayer of his complaint, plaintiff sought punitive damages of $250,000 and an order that Unocal be enjoined from terminating or failing to renew his lease except in accordance with PMPA. Plaintiff dropped the request for damages before entry of the judgment. In the order granting summary judgment, the court ordered that Unocal be permanently enjoined from terminating or failing to renew the lease except in accordance with the PMPA, but the judgment does not contain that injunction. We need not and do not decide whether there is presently an effective injunction. We discuss plaintiff's present rights in the station only because it is necessary to do so in order to determine whether the nonrenewal was wrongful.

[2] 15 USC § 2801(2) defines "franchise relationship":

"the respective motor fuel marketing or distribution obligations and reponsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise."

Although the franchise relationship included agreements other than the lease, those agreements are not in the record. However, nonrenewal of the lease unquestionably terminated the entire relationship. Our discussion of the parties' rights and obligations under the lease, therefore, is for these purposes a discussion of their rights and obligations under the "franchise relationship" within the meaning of PMPA.

on which such * * * nonrenewal takes effect." The statute distinguishes between a "termination," which may occur during the course of a franchise term and requires either that the franchisee be guilty of wrongdoing or that the franchisor make a significant change in its policy, and a "nonrenewal," which may occur only at the end of a franchise term and is more easily justified. 15 USC § 2802(b). The parties agree that Unocal's action was a nonrenewal, and it does not claim to have grounds to terminate plaintiff's lease.

15 USC § 2801(14) defines "nonrenewal" to mean

"with respect to any franchise relationship, a failure to reinstate, continue, or extend the franchise relationship—

"(A) at the conclusion of the term, or *on the expiration date, stated in the relevant franchise*[.]" (Emphasis supplied.)

The *only* date on which Unocal's nonrenewal of plaintiff's lease could be effective under that definition is the date on which the lease expired. *See Blankenship v. Atlantic-Richfield Co.,* 478 F Supp 1016 (D Or 1979). The provision in paragraph 1 of the lease that Unocal will renew plaintiff's tenancy at the expiration date unless it had previously terminated or elected not to renew it is consistent with that understanding of PMPA. The only reason for the tenancy to continue would be for the franchise relationship to continue.

Unocal did not give plaintiff notice of nonrenewal 90 days before the lease expired. Indeed, it did nothing whatever until 16 days before that date. Nevertheless, Unocal argues, its later notice was proper, because the effective date of the notice was after the expiration of the lease and any extensions and was more than 90 days after the date of the notice. There are two bases for its argument. First, it asserts that, after the expiration date, plaintiff's tenancy was renewed on a month-to-month basis, not, as plaintiff claims, for a new term of three years. *See* ORS 91.070. Second, it cites cases that hold that under the PMPA a 90-day notice of nonrenewal may be effective at any time after the expiration of the franchise relationship. *See, e.g., Davis v. Gulf Oil Corp.,* 485 A2d 160, 166 (DC 1984). We first consider the second argument.

Some of the cases that Unocal cites in support of the second argument are distinguishable, because the parties

explicitly agreed *before* the expiration date to extend the relationship and the 90-day notice referred to the date on which the extension ended. *See, e.g., Brach v. Amoco Oil Co.,* 677 F2d 1213 (7th Cir 1982); *Kesselman v. Gulf Oil Corp.,* 479 F Supp 800 (ED Pa 1979), *aff'd* 624 F2d 1090 (3rd Cir 1980). In this case, the only purported extensions of the lease occurred *after* its expiration date, so they are irrelevant if the lease was automatically renewed for three years.

Other cases give Unocal stronger support. They hold without qualification that a notice of nonrenewal is sufficient without regard to the expiration date, so long as it is effective after that date and at least 90 days after the date of the notice. In *Davis v. Gulf Oil Corp., supra,* for example, the District of Columbia Court of Appeals held that the notice of nonrenewal was timely if it came 90 days before "the franchisor's termination of performance and demand for possession." It did not matter that the notice came only a short time before the expiration date. 485 A2d at 167. The court emphasized the phrasing of 15 USC § 2804(a)(2) that the notice be furnished at least 90 days before the date on which the nonrenewal "takes effect." Those words, it held, "refer to the date after which the franchisee no longer is authorized by the franchisor to conduct business." 485 A2d at 166. The court believed that establishing a rigid date after which the franchisor could not refuse to renew would unnecessarily limit the franchisor's flexibility and would force it to issue a notice of nonrenewal when there might be active negotiations in progress for a renewal.

The difficulty with *Davis v. Gulf Oil Corp., supra,* and similar cases lies in their failure to consider 15 USC § 2801(14), under which a "nonrenewal" by definition occurs at the conclusion of the term or on the expiration date stated in the franchise agreement. Under PMPA, that is the only time when the franchisor has the opportunity to nonrenew the relationship. If it does not do so then, the relationship is renewed. The limitations on the franchisor's flexibility that that interpretation embraces are the limitations that Congress intended to impose.

We conclude that plaintiff is correct on the second argument and that the franchise relationship between plaintiff and Unocal was automatically renewed on February 1,

1987. The next issue is defendant's argument concerning the term of the renewal. We consider that issue first as a matter of the construction of the lease. Because we hold that the lease provides for a three-year renewal, we need not decide whether PMPA itself requires that the renewal be for the same term as the previous lease.[3]

Unocal argues that the renewal was for a month-to-month tenancy, not for a new three-year lease. It emphasizes the distinction in paragraph 1 of the lease between the *lease,* which ends automatically on the expiration date, and the *tenancy,* which is renewed unless there is a proper notice of nonrenewal. Because plaintiff paid a monthly rental for the station, Unocal argues that the renewed tenancy was month-to-month and was subject to nonrenewal at the start of any month. *See* ORS 91.070. If Unocal is correct, the July 23, 1987, notice of nonrenewal effective November 2, 1987, was proper, because it came more than 90 days before the proposed non-renewal and would take effect at the close of a monthly term. Plaintiff responds that the lease and other franchise documents show that the renewal was to be for another full three-year term.[4]

Both Unocal's and plaintiff's arguments depend on the proper construction of the lease's renewal provisions, which is a matter for the court. *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). Unocal relies on the purported distinction in paragraph 1 between the *lease,* which it says automatically ends, and the *tenancy,* which automatically renews. The use of different words does not by itself establish the nature of the

---

[3] In *Blankenship v. Atlantic-Richfield Co., supra,* the court, after determining that the notice of nonrenewal was defective, granted an injunction requiring renewal of the lease for another three-year term. Its opinion does not describe the terms of the lease, and the court apparently relied on PMPA, not on those terms. 478 F Supp at 1019. However, in *Kesselman v. Gulf Oil Corp., supra,* the court enforced an *explicit* lease provision that any renewal would be month-to-month rather than for the full term of the previous lease. Presumably, the court in *Kesselman* did not find that a month-to-month renewal would violate the statute.

[4] Plaintiff also argues that, under the previous lease, he was a tenant for years and that the renewal was, therefore, for at least one year. *See Clifford v. Smith Meat Co.,* 84 Or 1, 163 P 808 (1917). Because of our construction of the nonrenewal provision of the lease, we need not determine the merits of that argument.

automatic renewal, however. Other portions of the lease demonstrate that it is the entire lease that renews, not simply the tenancy.

Paragraph 1 itself provides that the "tenancy" will be renewed, unless Unocal elects not to renew "this Lease" pursuant to paragraph 10. That phrasing suggests that the lease used the two terms interchangeably. Paragraph 10 strengthens that conclusion. It states that Unocal is not obligated to renew "this Lease" in certain circumstances and requires Unocal to give 90 days notice that "this Lease" is not being renewed. The clear implications are that Unocal *is* required to renew the lease if the conditions for nonrenewal do not occur and that "tenancy" in paragraph 1 has the same meaning as "this Lease" in paragraph 10.[5] There is only one reasonable way to read the lease. Therefore, there is no ambiguity, and summary judgment for plaintiff was proper.

We hold that the lease, not just the tenancy, was renewed on February 1, 1987, for an additional three-year term. Because Unocal did not give a notice of nonrenewal that complied with PMPA and the terms of the lease, the trial court correctly held that Unocal's attempted nonrenewal of the lease during the course of the renewed term was wrongful.

Affirmed.

---

[5] In his brief, plaintiff quotes paragraph 2 of the Retail Motor Fuel Purchase Contract in support of his position. That contract is part of the franchise relationship and might be relevant for construing the lease, which is another part of that relationship. However, the contract is not part of the record on summary judgment, and therefore we cannot consider it in any way.