Soheil **RAZAVI**, Plaintiff,

v.

**AMOCO OIL COMPANY**, Defendant.

Civ. A. No. 91–2375 (HHG).

United States District Court,
District of Columbia.

Aug. 4, 1993.

Harry C. Storm, Abrams, West & Storm, P.C., Bethesda, MD, for plaintiff.

Daniel F. Attridge, Ann E. Barlow, Kirkland & Ellis, Washington, DC (Douglas J. Reistroffer, AMOCO Corp., Chicago, IL, of counsel), for defendant.

*MEMORANDUM*

HAROLD H. GREENE, District Judge.

I

Pending before the Court are cross motions for summary judgment in this action involving Amoco Oil Company's ("Amoco") decision to sell its facility located at 500 New Jersey Avenue, Northwest, in Washington, D.C. The plaintiff, Soheil Razavi, who was operating an Amoco service station at this location as a trial franchise claims that, in executing this sale, Amoco violated the Pe-

troleum Marketing Practices Act ("PMPA"), 15 U.S.C.A. §§ 2801–2806 (1982 and 1993 supp.). There are essentially four issues in dispute between the parties, and the lack of genuine issues of material fact enables the Court to decide these matters on the motions for summary judgment. First, the plaintiff contends that Amoco did not provide him with the required notice under the PMPA for non-renewal of a franchise. Razavi's second claim is that Amoco's decision to sell the property was not made in good faith or within the normal course of business. The plaintiff contends that even if the decision to sell this property was proper, the right of first refusal offered to Razavi was inadequate. Finally, plaintiff argues that Amoco is estopped from selling the property on the basis of representations contained in a letter Amoco sent to Razavi discussing an extension of his trial franchise. After discussing the background of this case, the Court addresses each of these arguments in turn. For the reasons stated below, the Court finds that summary judgment in favor of the defendant is appropriate.

## II

Mr. Razavi entered into a contract with Amoco in June 1990 to operate an Amoco gas station at 500 New Jersey Avenue, N.W., as a trial franchise. The contract clearly states on its face that the franchise agreement was to run from July 1, 1990 to June 30, 1991.[1] See Exhibit # A to Defendant's Motion for Summary Judgment. Although Mr. Razavi had been involved with the operation of the gas station under the prior franchisee, this was the first contract he had signed with Amoco. As such, he was designated as a trial franchisee, which would normally allow Amoco, the franchisor, to elect not to renew the franchise for any reason.

Amoco advised the plaintiff three months prior to the signing of this contract that it intended to sell the 500 New Jersey Avenue property assuming a buyer could be located. Razavi sent Amoco a letter on May 18, 1990, prior to the signing of the contract, stating that he understood that "Amoco intends to sell [the property] at some time in the immediate future." See Exhibit # F to Defendant's Motion for Summary Judgment. As noted, as a trial franchisee, Razavi was not legally entitled to the nonrenewal provisions of section 2802 of the PMPA. See 15 U.S.C.A. § 2803(b)(1)(D)(iii); Freeman v. BP Oil, Inc., 855 F.2d 801, 802 (11th Cir.1988). Nevertheless, given Amoco's clear intention to sell the property, the parties agreed that the company would comply with the notice requirements contained in section 2802(b)(3)(D) in the event that it reached a deal with a prospective buyer. See Exhibit # F to Defendant's Motion for Summary Judgment. Under this agreement, Razavi would be afforded forty-five days to match any offer which Amoco received for the property.

On May 30, 1991 Amoco signed a real estate contract with a third party to sell its property at 500 New Jersey Avenue, N.W. This contract clearly stated Amoco's obligation to offer Razavi the opportunity to purchase the property on the same terms as those offered the third party. The contract stated that a decision by Razavi to purchase the property would void the deal reached between Amoco and the third party, an entity known as 500 NJ Associates.

On June 21, 1991, nine days before the June 30, 1991 end of the lease, Amoco notified the plaintiff that the trial franchise would not be renewed because Amoco had decided to sell the property. Amoco further stated that the effective date of the nonrenewal would be September 21, 1991, ninety-two days after the June 21, 1991 letter. And the letter also advised Razavi of his right of first refusal with respect to the offer Amoco had received for the property. By the terms of the PMPA, Razavi had forty-five days to accept the terms of the contract signed by

---

1. The plaintiff states in his complaint that the lease ran through May 31, 1991 but concedes in his motion for summary judgment that his contract with Amoco ran from July 1, 1990 to June 30, 1991. See Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 2 n. 1. The plain language of the lease terms is controlling regardless of different dates that may have been discussed by the parties prior to signing the lease.

the third party.[2] *See* 15 U.S.C.A. § 2802(b)(3)(D).

At the time Razavi's right of first refusal expired on August 16, 1991, he had not taken any steps to accept the terms of the purchase and sale agreement. Amoco agreed to extend the period of time within which Razavi could exercise his right of first refusal to September 30, 1991. Amoco also prolonged the effective date of nonrenewal of Razavi's trial franchise to October 15, 1991. On September 19, 1991 the plaintiff filed a complaint alleging that Amoco's attempt to sell the property was illegal. By agreement of the parties, Razavi has continued to operate an Amoco station at this location during the pendency of this action. *See* Exhibit # M to Defendant's Motion for Summary Judgment.

## III

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "Where the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance," summary judgment should not be granted. *Greenberg v. Food and Drug Admin.,* 803 F.2d 1213, 1216 (D.C.Cir.1986) (citations omitted). "Moreover, because summary judgment is a drastic remedy, courts should grant it with caution so that no person will be deprived of his or her day in court" on a contested issue. *Id.*

■ In opposing a motion for summary judgment a party may not rely on "mere allegations" but instead "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–

89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). The Supreme Court requires that the "nonmoving party ... go beyond the pleadings" and demonstrate a triable issue through affidavits, depositions, answers to interrogatories or admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ However, in assessing the factual record before the court at the summary judgment stage, "the district court ... must assume the truth of the non-movant's evidence, and draw all justifiable inferences in that party's favor." *Bayer v. Department of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992) (citations omitted). After viewing the evidence presented to the court in such a light, summary judgment should be granted only where the "evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ In undertaking this analysis courts should be mindful not only of the rights of parties to have factual issues resolved by a jury, but also the rights of litigants "to demonstrate in the manner provided by the Rule[56], prior to trial, that the claims and defenses have no factual basis." *Celotex, supra,* 477 U.S. at 327, 106 S.Ct. at 2555.

## IV

■ Each party has moved for summary judgment on the question of whether Amoco complied with the notice provisions contained in the PMPA when it informed Razavi, on June 21, 1991, that it would not be renewing his trial franchise. According to section 2804(a) of the PMPA, Amoco was required to notify Razavi that his franchise would not be renewed:

(1) in the manner described in subsection (c) of this section;[3] and

---

**2.** This forty-five day period began to run on July 2, 1991, the day Amoco sent the plaintiff a letter formally notifying him of his right to purchase the property and including a copy of the agreement it had reached with 500 NJ Associates.

**3.** The plaintiff does not dispute that the defendant complied with 15 U.S.C.A. § 2804(c). This section states that notice of nonrenewal must be

in writing and personally delivered or sent by certified mail. This notice shall contain a statement of the intention not to renew along with the reasons therefor, the date upon which such nonrenewal takes effect and a copy of the summary statement of the PMPA issued by the Secretary of Energy.

(2) . . . not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

15 U.S.C.A. § 2804(a) (1982 and 1993 supp.).

Each of the parties has interpreted this provision to impose significantly different obligations on Amoco in this case. Amoco contends that it complied with the ninety day notice requirement because the effective date of nonrenewal was September 21, 1991, over ninety days after the June 21, 1991 letter notifying Razavi that his franchise would not be renewed. Razavi contends that if Amoco did not want to renew his franchise, the PMPA required that it notify Razavi ninety days prior to the franchise expiration date which, in this case, would have been April 2, 1991.

The language of the statute and relevant precedent do not support the plaintiff's interpretation of the PMPA notice requirements. As noted above, section 2804(a)(2) of the PMPA states that notice must be given ninety days prior to the date when "nonrenewal to takes effect."

Under the plaintiff's interpretation, the date on which non-renewal takes effect would be the equivalent of the expiration date of the franchise agreement. However, if Congress intended these two terms to be synonymous, there would have been no reason to introduce the new phrase "when nonrenewal takes effect" in describing a franchisor's obligations. The requirement in 15 U.S.C.A. § 2804(c)(3)(B) that notice shall contain the "date on which such termination or nonrenewal takes effect" indicates that a franchisor has some leeway in fixing this important date. If non-renewal automatically took effect on the expiration date, there would be no need for the notice of non-renewal to mention this fact.[4]

The District of Columbia Court of Appeals addressed the meaning of the PMPA notice provisions in *Davis v. Gulf Oil Corp.*, 485 A.2d 160 (D.C.1984). In *Davis,* the court held that the requirement that notice be given ninety days before the nonrenewal takes effect refers "to the date after which the franchisee no longer is authorized by the franchisor to conduct business." *Id.* at 166.

The court went on to state that "regardless of when the franchise agreement is scheduled to expire, it would defy the common meaning of the words to say that nonrenewal has taken effect as long as the franchisor willingly permits the franchisee to maintain possession of the premises. . . ." *Id.* at 166–67. Thus, Amoco complied with the PMPA's ninety-day notice requirement if it notified Razavi of its intention not to renew either ninety days before the franchise agreement expired or ninety days before Amoco demanded possession. *Id.* at 167.[5] By notifying Razavi on June 21, 1991 that it would not be renewing his franchise and stating that the nonrenewal would take effect ninety-two days hence, on September 21, 1991, Amoco complied with section 2804(a)(2).

Many other courts have reached the same conclusion as the District of Columbia Court of Appeals. For example, the Eleventh Circuit held that a franchisor could permit the franchisee to remain in the premises beyond the period of the lease in order to comply with the PMPA's notice provisions. *Freeman, supra,* 855 F.2d at 802–03; *see also, Wagner v. Amoco Oil Co.,* Bus. Franchise Guide (CCH) ¶ 9183, at 19173 (M.D.Pa.1987); *Brown v. Magness Co.,* 617 F.Supp. 571, 574 (S.D.Tex.1985); *Kesselman v. Gulf Oil Corp.,* 479 F.Supp. 800, 803 (E.D.Pa.1979), *aff'd without op.,* 624 F.2d 1090 (3d Cir.1980).

4. In *Davis v. Gulf Oil Corp.*, 485 A.2d 160, 166–67 n. 4 (D.C.1984), the District of Columbia Court of Appeals reached a similar conclusion. The Court noted that it would be non-sensical to interpret the date which "nonrenewal takes effect" as the equivalent of the expiration of the franchise agreement. The use of a this new term—the date which "nonrenewal takes effect"—"strongly suggests" that the franchisor can make nonrenewal effective on "some date other than the expiration date on the franchise agreement." *Id.*

5. The D.C. Court of Appeals specifically rejected the argument raised by the plaintiff that unless Amoco provided notice of nonrenewal ninety days before the franchise expiration date the franchise is automatically renewed. *Id.* Such an interpretation runs counter to the PMPA's purpose of "permitting the franchisor maximal flexibility in conducting its marketing activities." *Id.*

Although there are some cases supporting the plaintiff's interpretation of the PMPA requirements, those cases are not directly on point.[6] This Court finds the analysis set forth in *Davis* to be more persuasive.

## V

The plaintiff argues that even if the Court finds that Amoco provided adequate notice under the PMPA, summary judgment is not proper because the parties dispute whether Amoco's decision to sell this property was made in good faith and in the normal course of business. This argument is based on 15 U.S.C.A. § 2802 which lists the proper grounds on which a franchisor can decide not to renew a franchise. Section 2802(d) states that a decision to sell the franchise premises "made by the franchisor in good faith and in the normal course of business" is a proper grounds for nonrenewal of a typical franchise.

■ As an initial matter, Amoco need not satisfy even this minimal condition since Razavi only had a trial franchise which, under the PMPA, can be nonrenewed for any reason. 15 U.S.C.A. § 2803(b)(1)(D) states that the proper grounds for nonrenewal of franchises contained in section 2802 do not apply to a trial franchise. Indeed, the plaintiff does not dispute the fact that he had a trial franchise relationship with Amoco. Therefore, the requirement that a decision to sell the property where a franchisee is operating be made in good faith and in the normal course of business does not protect a trial franchisee.

■ The parties agreed in this case that, given Amoco's intention to sell the premises from the outset, Razavi would receive some

protection beyond what is normally given to a trial franchise. Thus, the Court has also analyzed relationship as a "trial franchise plus." The parties disagree over exactly what extra safeguards Razavi was to be accorded. Amoco argues that the only extra protection it agreed to grant Razavi's trial franchise was the right of first refusal on any potential sale. The record does not support this assertion. The May 18, 1990 letter Razavi sent Amoco stated that Amoco would comply with section 2802(b)(3)(D) in the event it decided to sell the property.[7] The letter did not limit Amoco's obligations solely to the right of first refusal contained in this provision, but presumably extended to each requirement of section 2802(b)(3)(D).

Amoco also makes the point that this correspondence does not contain the signature of an Amoco representative and that Amoco, in fact, refused to sign the letter. Nevertheless, Amoco's failure to object to this letter may imply that the letter is an accurate statement of the understanding the parties had with respect to Amoco's obligations. More importantly, in its own memorandum of points and authorities submitted in support of its motion for summary judgment Amoco states that it "agreed that, in the event its plans to sell the facility came to fruition during the term of the plaintiff's trial franchise, Amoco would comply with section 2802(b)(3)(D)."

■ However, these conclusions do not, in the end, help the plaintiff. On the question of whether Amoco's decision complied with section 2802(b)(3)(D), the Court finds that the alleged factual disputes raised by the plaintiff do not preclude the entry of summary judgment. The plaintiff's primary con-

---

6. A number of cases cited by the plaintiff can be distinguished from the present situation. For example, the plaintiff relies heavily on *Wirkkula v. Union Oil Co.*, 98 Or.App. 282, 780 P.2d 223 (1989). However, in *Wirkkula* the franchisor did not provide the franchisee with notice of nonrenewal prior to the expiration date of the franchise agreement, raising questions about whether the franchise was automatically renewed. In *Blankenship v. Atlantic–Richfield Co.*, 478 F.Supp. 1016 (D.Ore.1979), the franchisor did not permit the franchisee to remain in possession of the premises for ninety days after the notice of nonrenewal.

7. At oral argument the defendant claimed that the May 18, 1990 letter was superseded by the signed lease. Specifically, it refers the court to paragraph 30 of the lease which states that the lease "cancels and supersedes all prior written and unwritten agreements and understandings...." The lease is dated May 17, 1990, one day prior to the letter in question. Therefore, the lease does not supersede the May 18, 1990 letter from Razavi to Amoco.

tentions are that Amoco's sale of the premises violated the company's internal guidelines for the disposition of property and that the indemnification agreement between Amoco and 500 NJ Associates is evidence of improprieties in this sale.[8] Razavi also claims that he was pressured to waive his right of first refusal by the broker of Amoco's real estate contract. According to Razavi, this broker commenced litigation against him on another matter while Razavi was considering whether to match 500 NJ Associates' offer.

Razavi argues that this circumstantial evidence warrants further discovery on this issue and that summary judgment is not proper. This Court disagrees. The internal guidelines upon which the plaintiff relies to imply that Amoco was deviating from its normal business practices were superseded by new internal policies as of May, 1988. Thus, the guidelines upon which the plaintiff relies were not in effect at the time of this sale.[9]

Perhaps the most persuasive point establishing that the decision to sell this property was made in good faith and in the normal course of business and that there is no genuine issue on that matter, is the fact that Amoco had been striving to accomplish the sale of this property long before he even entered into a franchise relationship with the defendant. In fact, Amoco had been involved in negotiations to sell this property with various potential buyers for five years prior to the time when it signed the contract with 500 NJ Associates. *See* Exhibit B to Defendant's

Opposition to Plaintiff's Motion for Summary Judgment. For all these reasons, the Court finds that the evidence on this issue is such that a reasonable jury could not find that Amoco's decision to sell the property did not comply with its "normal decision-making process." *Kessler v. Amoco Oil Co.*, 670 F.Supp. 853, 857 (E.D.Mo.1987).[10]

Lastly, the plaintiff contends that the Court should permit discovery on the question of whether this sale was negotiated in good faith and in compliance with Amoco's normal course of business. The plaintiff has not persuasively explained why it failed to take discovery on this issue during the nearly two years which have passed since the complaint was filed. The defendant never moved for a protective order and this Court never issued an order staying discovery or requiring that it be completed by a certain date.[11] In fact, the December 13, 1991 order summarizing the proceedings at the December 10, 1991 status call do not mention any restrictions imposed on discovery.

The Court does not find that the good faith/normal course of business issue was a matter that the plaintiff did not expect to be addressed in the dispositive motions. In Paragraph 12c of the plaintiff's complaint, Razavi states that "Amoco's decision to sell its interest in the [premises] was not made in good faith and in the normal course of business as required by 15 U.S.C. § 2802(b)(3)(D)." The good faith issue was also raised at the December 10, 1991 status

8. Under this indemnification agreement, 500 NJ Associates agreed to indemnify Amoco for all damages awarded to Razavi from a claim that his trial franchise was wrongfully terminated.

9. According to the declaration of James Boone, the sale of the 500 New Jersey Avenue property complied with the new guidelines. *See* Exhibit B to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.

10. The Court likewise does not consider the indemnification agreement as evidence that Amoco acted outside the normal course of business. This agreement provided that 500 NJ Associates would pay any damages that resulted from a wrongful termination claim brought by Razavi. As the existence of this litigation indicates, it was certainly within reason to anticipate that Razavi would file a lawsuit as a result of Amoco's sale of the property. Razavi has produced no evidence,

beyond proffers of counsel, to show that it was outside the "normal course of business" for Amoco to bargain to ensure that a buyer would compensate them for any losses that might result from this sale. And the Court does not find that the conduct of third parties beyond the control of Amoco establishes that the defendant acted in bad faith in this instance.

11. At oral argument, the plaintiff claimed that the parties informally agreed, at the outset of the case, not to pursue discovery until the Court decided the PMPA notice issue. The Court was not notified of this agreement. Moreover, the inclusion of good faith and normal course of business issues in the dispositive motions filed in early 1992 should have caused a reevaluation of the wisdom of this agreement.

call before this Court. Therefore, it is not appropriate for the plaintiff to be allowed to initiate discovery at this late date.

For these reasons, the Court concludes that the defendant is entitled to summary judgment on the question of whether it acted in good faith and in the normal course of business in deciding to sell this property.

## VI

■ Amoco is also entitled to summary judgment on the question of whether the right of first refusal offered by the defendant was adequate. Once Amoco reached an agreement with 500 NJ Associates it notified Razavi that he had forty-five days, as required by the PMPA, to match the offer if he wanted to purchase the property. Under the PMPA, Amoco was obligated to sell the property to Razavi "on terms identical to those the [franchisor] has received from another." *Ellis v. Mobil Oil Corp.*, 708 F.Supp. 1094, 1096 (D.Ariz.1989) (citations omitted), *aff'd in relevant part* 969 F.2d 784 (9th Cir.1992); *see also, Atlantic Ave. Oil & Gas Ltd. v. Texaco Ref. & Mktg., Inc.*, 699 F.Supp. 27, 31 (E.D.N.Y.1988), *aff'd* 870 F.2d 93 (2d Cir. 1989) (a "right of refusal is a right to buy on the same terms offered by a third party"). The fact that the contract recognized the Hellman Company as the broker and stated that Hellman would receive its brokerage commission regardless of who purchased the property does not make the right of first refusal defective. This term was part of the contract with 500 NJ Associates and Razavi was obligated to comply with it if he wanted to purchase the property.

■ For that same reason, the provision of Amoco's agreement with 500 NJ Associates for a tax-free property exchange did not negate Razavi's ability to exercise his right of first refusal.[12] A franchisee only has "the right to match" the terms of the contract between the franchisor and the prospective buyer. *Ballis v. Mobil Oil Corp.*, 622 F.Supp. 473, 475 (N.D.Ill.1985). The franchisee is not entitled to any special price discounts. *Id.* Razavi was afforded that opportunity here, so the right of first refusal was adequate.[13]

## VII

■ Lastly, Razavi claims that Amoco is estopped from selling this property as a result of a March 19, 1991 letter Amoco sent to Razavi. In this letter, sent over three months before Amoco notified Razavi that it would not be renewing his franchise, Amoco stated that a representative would be in contact with Razavi about new lease terms as the June 30, 1991 expiration of the existing arrangement approached. This correspondence specifically stated that the "letter should not be construed as our offer at this time of a new lease or franchise." *See* Exhibit # H to Defendant's Motion for Summary Judgment. Such an offer, the letter went on to say, would depend on the nature of the business relationship at the time the current contract expired. *Id.*

■ Generally, a party raising an estoppel claim must show that he "changed his position prejudicially in *reasonable* reliance" on another party's false representation. *Nolan v. Nolan*, 568 A.2d 479, 484 (D.C.1990) (emphasis added). The evidence offered by the plaintiff simply does not support the claim that estoppel applies to this situation. Amoco did not falsely represent its intentions in the March 19, 1991 letter since the deal to sell the premises was several weeks away from being finalized. Additionally, in light of Amoco's clear statement that the letter did not constitute an offer to extend Razavi's franchise, any reliance on the March 19 correspondence was not reasonable.

12. The Court also rejects plaintiff's claim that he was not afforded a complete copy of the contract outlining the offer it was being asked to match. The plaintiff waited several weeks before even requesting the entire contract and after Amoco sent them the missing page (the signature page) it extended the period of time in which Razavi had to match the offer.

13. The cases relied on by the plaintiff to claim that the right of first refusal was insufficient are not directly applicable to this case. For example, *Slatky v. Amoco Oil Co.*, 830 F.2d 476 (3d Cir.1987), involves the rights of a franchisee where the franchisor decides not to renew for business reasons, as opposed to a decision to sell the premises.

## VIII

This Court has carefully reviewed the briefs submitted by the parties and considered the arguments made by counsel on July 22, 1993 on the question of Amoco's nonrenewal of Razavi's trial franchise. For the reasons stated above, the Court finds that the defendant is entitled to summary judgment on all claims. An order reflecting this conclusion is being issued contemporaneously with this Memorandum.

## *ORDER*

For the reasons stated in the attached Memorandum, it is this 4th day of August, 1993

ORDERED that the plaintiff's motion for partial summary judgment be and it is hereby denied; and it is further

ORDERED that defendant's motion for summary judgment be and it is hereby granted; and it is further

ORDERED that judgment is hereby entered in favor of defendant.