Nowaczyk, et al. v. NHSP            CV-99-351-M    01/18/01
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Steven J. Nowaczyk, et al.,
      Plaintiffs

      v.                                    Civil No. 99-351-M
                                            Opinion No. 2001 DNH 013
Jeanne Shaheen, Governor of New Hampshire,
Henry Risley, Commissioner of Corrections,
Michael Cunningham, Warden of the
New Hampshire State Prison,
      Defendants


                    **O R D E R**


      This civil rights action, brought by twenty-two inmates at

the New Hampshire State Prison for Men in Concord (NHSP),

challenges the prison's ban on the use and possession of tobacco

and tobacco related products (the tobacco-free policy).

Currently before the court are Defendants' Motion for Summary

Judgment (document no. 26) and Plaintiffs' Motion to Stay Summary

Judgment Pursuant to Fed. R. Civ. P. 56(f) (document no. 31).


                    **Standard of Review**

      Summary judgment is appropriate when the record reveals "no

genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor.  See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear

2

the ultimate burden of proof at trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

If it is apparent from the affidavits of the party opposing summary judgment that facts cannot be presented appropriately without further discovery, the court may, pursuant to Rule 56(f), grant a continuance. Generally speaking, a Rule 56(f) motion must:

> (1) be within a reasonable time after the filing of the summary judgment motion; (2) place the district court on notice that movant wants the court to delay action on the summary judgment motion, whether or not the motion cites Rule 56(f); (3) demonstrate that movant has been diligent in conducting discovery, and show good cause why the additional discovery was not previously practicable with reasonable diligence; (4) set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist, and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion; and (5)

3

> attest that the movant has personal knowledge of the
> recited grounds for the requested continuance.

Simas v. First Citizens' Federal Credit Union, 170 F.3d 37, 45 n.4 (1st Cir. 1999) (internal citations and quotation marks omitted) (emphasis added).

## Factual and Procedural Background

In June of 1999, NHSP began taking steps to implement a tobacco-free policy. A series of memoranda were distributed to inmates and staff informing them of the policy, the steps to be taken to implement the policy, and inviting comments and suggestions about how best to achieve implementation. By August 11, 1999, smoking cessation programs were developed for both staff and inmates which included presentation of a series of videos dealing with smoking issues; establishment of inmate facilitated support groups; a wellness exercise program; access to nicotine patches to assist in overcoming the nicotine habit; and the availability of carrots and celery sticks for distraction. Initially, inmates were going to be required to pay in advance for nicotine patches, but, following suggestions from

4

inmates, a payment plan was developed to account for some inmates' lack of readily available funds.

Twenty-two NHSP inmates filed this suit on August 4, 1999, alleging that the prison's tobacco-free policy violates the Eighth Amendment's prohibition against cruel and unusual punishment, and violates the Ninth Amendment "insofar as the right to smoke cigarettes and generally use tobacco related products is one of those enumerated individual 'laws of nature' right[s] people have and is protected by penumbras formed by emanations from other enumerated rights, specifically the First, Third, Fourth, and Fifth Amendments . . . ." Complaint at 1.

The original endorsed discovery plan established a discovery deadline of August 31, 2000. NHSP imposed the tobacco ban on September 1, 1999. Plaintiffs served defendants with a request for documents on October 4, 1999. That request was apparently ignored, but plaintiffs never moved to compel production. The case was later stayed pending resolution of a similar and earlier filed state proceeding, and reopened on January 4, 2000, after the state suit was voluntarily withdrawn. The original discovery plan was re-adopted when the stay was lifted, with the amendment

5

that dispositive motions could be filed at any time.  See Order of Jan. 4, 2000.

On April 27, 2000, plaintiffs served defendants with another discovery request captioned "Interrogatories & Documents Request #1."  Defendants responded on June 8, 2000, with answers and objections.  No documents were attached and plaintiffs again failed to pursue available remedies to compel more complete responses.

Defendants - the prison warden, the commissioner of corrections, and the governor of New Hampshire - moved for summary judgment on July 3, 2000 (document no. 26).  In response, plaintiffs moved for a continuance in order to complete further discovery (document no. 28).  See Fed. R. Civ. P. 56(f).  Because the additional information sought by plaintiffs was not sufficiently specified, this court denied plaintiffs' motion for additional time to respond.  But, noting plaintiffs' pro se status, the court described the information required to consider a new motion and granted leave to refile with specificity by September 15, 2000.  See Order of Aug. 30, 2000.

## Discussion

Plaintiffs' renewed Rule 56(f) motion requests further time for discovery to seek the following information:

(A) medical evidence justifying the Defendants' decision to ban tobacco products and their conclusions regarding the implementation plan;

(B) evidence supporting Defendants' claim of valid penological objectives;

(C) research, reports, feasibility studies, and/or information from any and all medical experts and staff on which Defendants relied;

(D) any and all service and repair reports for the maintenance of the plant and equipment;

(E) any and all reports regarding the cost breakdown of any increases or decreases in health care services for the inmate population relating to tobacco use;

(F) charts and reports related to increased acts of violence due to the tobacco ban;

(G) the qualifications of the group and exercise program facilitators;

(H) the medical basis for the brand of nicotine patch offered; and

(I) responses to the October 4, 1999, request for documents and to interrogatories served on Governor Shaheen on August 8, 2000.

See Pl. Mot. Pursuant to Fed. R. Civ. P. 56(f) (Pl. Rule 56(f) Mot.) ¶¶ 9, 11-14, 29-33 (document no. 31).  Plaintiffs have also

7

moved the court to appoint a medical expert for them and/or to order defendants to produce a study on nicotine addiction recently completed by a Dr. Difranza of the University of Massachusetts. Id. ¶¶ 6, 40-43.

While more detailed than their previous Rule 56(f) motion, plaintiffs' current motion is also denied because the information they seek does not address the issues raised in defendants' summary judgment motion and would not raise any genuine issues of material fact. At the least, plaintiffs have not offered any plausible basis for believing that facts they hope to develop would influence the outcome of the pending summary judgment motions.

First, there is no federal constitutional right to use tobacco. See, e.g., Grass v. Sargent, 903 F.2d 1206, 1206 (8th Cir. 1990) (per curium); Reynolds v. Buck, 833 F. Supp. 518, 519 (E.D. Pa. 1993); Doughty v. Board of County Comm'rs, 731 F. Supp. 423, 426 (D. Colo. 1993). Prison officials are of course duty bound to protect the health and safety of inmates, and failure to perform that duty might well constitute a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, if

the pertinent acts or omissions are egregious and the product of a culpable state of mind.  See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The burden is on plaintiffs, however, to establish such a violation by proving a serious deprivation of basic human needs, such as food, water, safety, or medical care, as well as deliberate indifference to such a need on the part of prison officials and resulting harm.  See Helling v. McKinney, 509 U.S. 25, 32 (1993) (citing DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189, 199-200 (1987)).  Deliberate indifference, the subjective component of an Eighth Amendment claim, might be established by evidence that an "official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

But, the Eighth Amendment does not mandate comfortable prisons, Rhodes v. Chapman, 452 U.S. 337, 349 (1981), nor does it grant prisoners a right to smoke, or to treatment programs of their choice.  Fiallo v. Batista, 666 F.2d 729, 731 (1st Cir. 1981).

Tobacco is not a basic human need.  Indeed, plaintiffs necessarily concede that tobacco is actually harmful to human health.  See Complaint ¶ 8.  But, they argue, nicotine withdrawal does constitute a serious medical need for some habitual tobacco users, and, in implementing the prison's tobacco-free policy, defendants were deliberately indifferent to that medical need.  Additionally, plaintiffs challenge the tobacco-free policy on grounds that it poses an excessive risk of harm to all inmates, because inmates experiencing nicotine withdrawal are more likely to engage in violent behavior toward others.

The warden acknowledges some unavoidable discomfort associated with quitting smoking (or other tobacco use) and the attendant physical effects of nicotine withdrawal.  See Def. Summ. J. Mot. Ex. A, Cunningham Aff. ¶6 (Cunningham Aff.).  He also concedes that discrete medical studies were not conducted by the administration, and medical experts were not directly consulted prior to implementing the tobacco-free policy.  See Pl. 56(f) Mot. Ex. B, Interrog. 2.  However, he says in his affidavit (attached to defendants' summary judgment motion) that prison officials in other states, that had implemented similar policies,

10

were consulted.  See Cunningham Aff. ¶ 5.  Indeed, the implementation programs put in place at NHSP are very similar to, if not more comprehensive than, programs implementing smoking bans upheld in other jurisdictions.  See Reynolds v. Buck, 833 F. Supp. 518, 519, 520 (E.D.Pa. 1993) ("classes on how to overcome the craving to smoke" and snacks); Doughty v. Board of County Comm'rs, 731 F. Supp. 423, 427 (D. Colo. 1989) ("some counseling and medical assistance to inmates who request it, and . . . video-taped movies on quitting smoking available").  The warden also notes that, in addition to the programs outlined in his August 11, 2000, memorandum, "all inmates have access to the Health Services Center and have complete access to medical staff should medical treatment be required."  Cunningham Aff. ¶ 7.

These facts are undisputed at this point, and would seem to belie any claim that defendants have ignored a known serious risk to plaintiffs' health with deliberate indifference.  The additional discovery sought by plaintiffs, whatever its content might turn out to be, would not put these material facts in dispute, nor do plaintiffs suggest that the pertinent facts related to implementation of the policy can be reasonably

disputed.  Indeed nothing in plaintiffs' motion suggests how the additional discovery might relate to issues raised in the summary judgment motion.

With regard to the safety issue raised by plaintiffs, the record reveals that other officials with whom the warden consulted "indicated that there had been no increase in violence at their institutions attributable to implementing a tobacco-free policy."  Cunningham Aff. ¶ 5.  The warden is unaware of any increase in either related or overall violence since the tobacco-free policy was implemented over a year ago.  Id. ¶ 10.  But those asserted facts seem immaterial, and even if the information sought by plaintiffs relative to prison violence revealed something different – say a statistical increase in prisoner violence – that would not be relevant to the issues raised in the summary judgment motion.  It would be an impossible stretch to claim, for example, that a prison policy banning tobacco is necessarily rendered unconstitutional because habitual smokers might be more inclined to unlawfully assault others if deprived of tobacco.  "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional

12

liability for prison officials responsible for the victim's safety." <u>Farmer</u>, 511 U.S. at 834. Besides, even if a causal connection could be made between the tobacco-free policy and an increased risk of violence, the solution would lie in measures designed to limit the risk or control the violence, and not in mandating the availability of tobacco in the prison.

## Conclusion

Accordingly, plaintiffs' Rule 56(f) motion (document no. 31) is denied. Plaintiffs must object or otherwise respond to defendants' pending motion for summary judgment (document no. 26), on or before February 16, 2001. The trial is continued; a new date will be set by the Clerk.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 18, 2001

cc:   Steven Nowaczyk
      Stephen Dugay
      James Towne
      John L. Watt
      Elmer Lee Baron
      Michael C. Herrick
      Steve Merchant
      Arthur Burley
      Carl Laurie
      Richard Pliskaner
      Albert Nadeau
      Jeff Eastman
      Charles Johnson
      Earnest Therrier
      James Poulicakos
      Patrick Morehouse
      Robert Phair, Jr.
      Keith Mountjoy
      Raven Dodge
      Walter Bourque
      Leon Cable
      Patrick S. Parrish
      Daniel J. Mullen, Esq.