Edmund **MANN** and Beverly Mann,
Plaintiffs–Appellants,

v.

**UNITED STATES of America,**
Defendant–Appellee.

**No. 922, Docket 89–6232.**

United States Court of Appeals,
Second Circuit.

Argued March 28, 1990.

Decided May 15, 1990.

Edmund D. Mann, pro se.

Charles S. Kleinberg, Asst. U.S. Atty., E.D.N.Y., New York City (Andrew J. Maloney, U.S. Atty., Robert L. Begleiter, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before OAKES and WINTER, Circuit Judges, and MUKASEY,* District Judge.

PER CURIAM:

This is an action for damages against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2401, 2402, 2671–2680 (1982 & Supp. V 1987) ("FTCA" or "Act"). Plaintiff Edmund Mann and his wife Beverly Mann allege that the Northport Veterans Administration Hospital in Northport, Long Island ("the VA Hospital") committed medical malpractice in the course of surgery on Mr. Mann.

By consent of the parties, *see* 28 U.S.C. § 636(c) (1982 & Supp. V 1987), the case was tried before Magistrate Ross, who, after a four-day bench trial, held for the government. On appeal, the Manns raise two issues: (i) whether Magistrate Ross erred in finding that the VA Hospital did not deviate from accepted medical stan-

---

\* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

dards in its treatment of Mann, and (ii) whether the VA Hospital's use of a resident to perform surgery violated federal law.

█ The Magistrate properly applied New York law, which requires a plaintiff to establish that the physician violated ordinary and accepted standards or failed to exercise the skill of the average member of the medical community. *See Pike v. Honsinger,* 155 N.Y. 201, 209, 49 N.E. 760 (1898); *Hale v. State,* 53 A.D.2d 1025, 386 N.Y.S.2d 151 (mem.), *appeal denied,* 40 N.Y.2d 804, 387 N.Y.S.2d 1032, 356 N.E.2d 484 (1976). With regard to this issue, Magistrate Ross credited the testimony of the doctors who performed the surgery, as well as the testimony of the defendant's expert, all of whose testimony directly supported her conclusion that ordinary and acceptable medical standards and skills had been observed and utilized. We cannot say that her findings are clearly erroneous.

█ The remaining question is whether it was negligence per se for an intern, who was not yet licensed in any state at the time of his residency, to operate on Mann. In view of the fact that the intern was directly supervised by a licensed physician during the operation, we believe it was not. Congress has explicitly authorized veterans' hospitals to employ interns and residents. At the relevant time,[1] 38 U.S.C. § 4114(a)(1)(A) stated in pertinent part:

The Administrator, upon the recommendation of the Chief Medical Director, may employ, without regard to civil service or classification laws, rules, or regulations—

(A) physicians, dentists, ... and other professional, clerical, technical, and unskilled personnel (including interns, residents, trainees, and students in medical support programs) on a temporary full-time, part-time, or without compensation basis.

Congress had also provided veterans' hospitals with broad authority to train unskilled personnel. Title 38, Section 4114(b)(1) thus stated:

The Administrator shall have authority to establish residencies and internships; to appoint qualified persons to such positions without regard to civil-service or classification laws, rules, or regulations; and to prescribe the conditions of such employment, including necessary training. . . .

We believe these sections amply authorize veterans' hospitals to employ interns and residents and to allow them, as part of their training, to provide medical care when supervised by a licensed physician.

█ Mann argues, however, that 38 U.S.C. § 4105(a) required that all doctors providing care at veterans' hospitals be licensed to practice. This provision stated in pertinent part:

Any person to be eligible for appointment to the following positions in the Department of Medicine and Surgery must have the applicable qualifications:

(1) Physician—

hold the degree of doctor of medicine ... from a college or university approved by the Administrator, have completed an internship satisfactory to the Administrator, and be licensed to practice medicine, surgery, or osteopathy in a State. . . .

38 U.S.C. § 4105(a) (1982). However, the licensing requirement applies only to a person appointed as a "physician," in contrast to persons appointed under Section 4114 as "other professional, clerical, technical, and unskilled personnel (including interns [and] residents ...)". We therefore conclude that the VA Hospital's allowing an unlicensed intern to perform surgery under the supervision of a licensed physician was not prohibited by Section 4105. *Cf. Abram v. Children's Hosp. of Buffalo,* 151 A.D.2d 972, 542 N.Y.S.2d 418 (1989), *appeal dismissed without opinion,* 75 N.Y.2d 865, 552 N.Y.S.2d 930, 552 N.E.2d 178 (1990) (New York informed-consent statute does not require that a patient be informed that nurse anesthetists, student physicians, and residents would participate vitally in administering anesthesia).

---

1. All references to Title 38 are to the 1982 version in effect at the time of Mann's surgery. The current version does not differ in substance.

Mann raises a number of other issues, but, because they have no basis in the present record, we may not consider them. *See Dictograph Prods. Co. v. Sonotone Corp.*, 231 F.2d 867 (2d Cir.) (per curiam), *cert. dismissed*, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956).

Affirmed.