Giordano v. Powell                      CV-94-180-JD  09/24/96
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE

Vincent Giordano

        v.                              Civil No. 94-180-JD

Ronald Powell, et al.


                              O R D E R


     The plaintiff, Vincent Giordano, brought this action against

the defendants, correctional officers and officials at the New

Hampshire State Prison and the New Hampshire Department of

Corrections, seeking declaratory and monetary relief under 42

U.S.C. § 1983.  Before the court is the defendants' motion for

summary judgment (document no. 31).


                           Background[1]

     On March 21, 1991, the plaintiff, an inmate at the New

Hampshire State Prison, submitted an inmate request slip

requesting a job change.  The request form stated:

        I am requesting a job change to the UST B as a clerk or
        outside worker.  I have had hepatitis and have tested
        positive for [HIV].  I do not believe I should be
        working in the kitchen.

Affidavit of Marilyn Ford, Ex. A, at 1.  Although the plaintiff

had indeed tested positive for HIV in 1987, subsequent tests,

_____

     [1]The facts relevant to the instant case are either not in
dispute or have been alleged by the plaintiff.

including one performed on January 13, 1989, revealed that the 1987 test had produced a false positive. Similarly, although the plaintiff claims to have had hepatitis in 1972, he has acknowledged that he did not have hepatitis at the time he submitted the request slip.[2]

After receiving the request slip and ascertaining that the plaintiff's "medical record did not substantiate his alleged medical condition," Ford Affidavit, Ex. B, at 3, Andrea Goldberg, a prison administrator, filed a disciplinary report against the plaintiff, charging him with providing false and misleading information to staff and feigning illness to avoid work. On April 3, 1991, the plaintiff received notice that a disciplinary hearing on these charges had been scheduled for April 8, 1991. See id., Ex. B, at 5. On April 8, 1991, hearing officer Roy Holland granted the plaintiff a continuance to obtain the medical records concerning his 1972 affliction with hepatitis, stating,

> Your continuance is granted: I will give you enough
> time to obtain needed paperwork. Consider this a
> notice for a new date of April 22, 1991 0800 hrs for
> your Hearing.

Id., Ex. C. The plaintiff acknowledged receiving this document. See id. On April 11, 1991, the plaintiff made a request for an

---

[2]On April 22, 1988, and April 25, 1988, the plaintiff completed "medical intake screening" forms at the prison and answered "no" to the question, "Do you have or have you had hepatitis?" Affidavit of Joyce Veon, Ex. 2, at 1, 3.

additional continuance until May 13, 1991, but the request was denied by officer Holland. The plaintiff appealed this decision to defendant Michael Cunningham, the prison warden, but the appeal was denied. See id., Ex. E, at 1, 2.

The hearing was conducted on April 22, 1991, and was presided over by defendant hearing officer Michael Sokolow. At the hearing, Sokolow denied the plaintiff's renewed request for a continuance, stating that the evidence concerning the plaintiff's 1972 bout with hepatitis, which the plaintiff still had not procured, was irrelevant in light of the plaintiff's more recent medical records. Transcript of Disciplinary Hearing at 17. Peter Rossa, the prison's chief of quality assurance, testified that the plaintiff's medical records indicated that he never had informed prison officials that he had hepatitis in 1972 or that he had received a false positive test for HIV in 1987. Andrea Goldberg testified that she immediately reassigned the plaintiff away from his job in the kitchen after receiving his inmate request slip.

After the hearing, Officer Sokolow found the plaintiff guilty on both of the charges against him. Sokolow noted in the disciplinary report in the space marked "evidence relied on for guilty findings" that the plaintiff

> indicated that he had tested positive for Hep[atitis]
> and HIV in 1972. However, [he] did not mention in his

3

> request dated 3-8-91 that more recent tests cleared him
> of this[;] clearly trying to get out of work and
> misrepresenting the current facts.

Ford Affidavit, Ex. B, at 4. The plaintiff was sentenced to 175 days loss of good time and 15 days of punitive segregation. In an additional space in the report in which Sokolow was required to explain the reason for imposing a loss of good time, Sokolow noted that

> [the] hearing resulted in numerous staff members being
> removed from their work for long periods of time making
> this a serious and expensive matter for the state.

Id. The plaintiff appealed the decision to Cunningham and defendant Ronald Powell, the commissioner of the New Hampshire Department of Correction. Although both appeals were denied, Powell reduced the good-time loss to seventy-five days.

In June 1992, the plaintiff brought an action in Merrimack Superior Court against the prison dentist, alleging that the dentist had been deliberately indifferent to the plaintiff's medical needs. On December 7, 1992, after the plaintiff complained that he was unable to chew solid foods, the dentist prescribed a soft diet for him. After the plaintiff began his diet, defendant Jonathan Topham, a corrections officer working in the prison cafeteria, informed the plaintiff on several occasions that he was not allowed to take food from the cafeteria's "regular" diet line unless he executed a waiver.

4

The plaintiff attests that

> [o]n January 7, 1993, [he] went through the diet line and informed defendant Topham that [he] did not want to continue with the diet line and demanded a waiver to be signed. [Topham] informed [the plaintiff] that he had none. [The plaintiff] left the diet mess hall and went to the regular mess hall and defendant Topham wrote a disciplinary report on [him].[3]

Plaintiff's Affidavit ¶ 20. He also attests that on that date "Officer Topham told [him] that [he] had to eat in the diet line until [he] signed a waiver and further stated `This is what you get for bringing a lawsuit.'" Id. ¶ 21.

On January 10, 1993, the plaintiff sent an inmate request slip to warden Cunningham, stating:

> Topham is continuing to harass me for my litigation by refusing me my food (ice cream) and eating it on the diet line. He also wrote me up . . . and refuses to feed me on the main line because I didn't sign a waiver.

Id., Ex. 1.[4]

On January 20, 1993, Topham spotted the plaintiff on the regular food line and again informed him that, absent a waiver, he could only take food from the diet line. The plaintiff

---

[3]Topham has attested that, to his knowledge, he did not file a disciplinary report against the plaintiff on January 7, 1996. Affidavit of Jonathan Topham ¶ 6.

[4]Topham attests that in January 1993 he had no knowledge of any lawsuits that the plaintiff had filed. He also attests that he never was made aware of the grievance that the plaintiff filed to Cunningham. Topham Affidavit ¶ 7.

5

requested a waiver, which Topham said he could not provide, and took food from the regular line. Following this incident, Topham filed a disciplinary report against the plaintiff, charging him with refusing to obey an order and with being out of place. Following another disciplinary hearing over which defendant hearing officer Steve Comeau presided, the plaintiff was sentenced to five days of punitive segregation and an additional ten days of punitive segregation from a previously suspended sentence. The plaintiff's appeal was denied by defendant Viola Lunderville.

The plaintiff filed the instant action on April 8, 1994. The court understands his complaint to allege (1) that the plaintiff was deprived of a liberty interest without due process of law when, following the 1991 hearing, he was sentenced to punitive segregation and a loss of good time solely on the basis of perjured testimony, without being granted the continuance that he requested, and without a sufficient explanation for the sentence;[5] (2) that the plaintiff was denied a liberty interest

_____

[5]In his affidavit in opposition to the defendants' motion for summary judgment, the plaintiff makes several additional claims related to the process he received. Although the court has endeavored to construe the plaintiff's pro se pleadings liberally, the court will not accept these additional allegations, which were not included in his original complaint and were filed more than two years thereafter, as an amendment to his complaint.

without due process of law when, following the 1993 hearing, Comeau sentenced him to punitive segregation without competent evidence, without giving the plaintiff an opportunity to call witnesses, and without providing a sufficient explanation for his decision; (3) that the plaintiff was deprived of his First Amendment right of access to the courts when officer Topham retaliated against him for filing a lawsuit against the prison dentist; and (4) that defendants Powell, Cunningham, and Lunderville are responsible in their supervisory capacities for permitting the underlying constitutional violations to occur.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

7

as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

## I.  The 1991 Disciplinary Action

The defendants contend that summary judgment is warranted on the plaintiff's due process claims pertaining to the 1991 hearing because, inter alia, the hearing with which he was provided comported with due process. The plaintiff claims that the hearing officer's reliance on perjured testimony, his refusal to

8

grant a continuance, and his justification for sanctioning him with a loss of good time constituted a violation of due process.

Where a prison disciplinary hearing may result in the loss of good time credits, due process requires that an inmate receive

> (1) advance written notice of the disciplinary charges;
> (2) an opportunity, when consistent with institutional
> safety and correctional goals, to call witnesses and
> present documentary evidence in his defense; and (3) a
> written statement by the factfinder of the evidence
> relied on and the reasons for the disciplinary action.

Superintendent v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)); see also McGuinness v. Dubois, 75 F.3d 794, 798 n.3 (1st Cir. 1996) (liberty interest implicated by revocation of statutorily created good-time credits resulting in a shortened prison sentence). "Some evidentiary basis" is required to support a guilty finding that results in a decision to revoke good-time credits. See Hill, 472 U.S. at 455.

After reviewing the record, the court finds that the plaintiff's hearing comported with due process. As to the plaintiff's claim concerning hearing officer Sokolow's reliance on the allegedly perjured testimony of Peter Rossa, the court finds that Sokolow was entitled to rely on this testimony. Rossa's testimony is supported by the medical records submitted to the court and indicates that the plaintiff never disclosed any prior history of HIV or hepatitis to the prison medical staff and was not afflicted with hepatitis in 1991. Concerning the

9

plaintiff's claims relating to the denial of his request for a continuance, the court notes that the evidence the plaintiff sought additional time to collect was of limited probative value in light of the charges against him.  Regardless of whether the plaintiff actually had suffered from hepatitis in the past, the allusions in his request slip to testing positive for HIV and to a prior bout with hepatitis, made without mention of his freedom from these afflictions at the time, were, at the very least, misleading.  Finally, the plaintiff's argument concerning the stated reasons for the disciplinary action are without merit. Although the disciplinary report states that the plaintiff's good time was revoked because the disciplinary hearing turned out to be "a serious and expensive matter for the state," the report, when read as a whole, reveals that Sokolow relied on the entire record before him in concluding that the plaintiff was "trying to get out of work and misrepresenting current facts" and in sentencing the plaintiff to a loss of good time.

The court grants summary judgment to the defendants on the plaintiff's claims relating to his 1991 disciplinary hearing.


II.  The 1993 Disciplinary Action

The defendants seek summary judgment on the plaintiff's due process claims stemming from the 1993 disciplinary action on the

10

ground that the plaintiff's placement in punitive segregation did not constitute the deprivation of a liberty interest. In Sandin v. Conner, 115 S. Ct. 2293 (1995), the Supreme Court held that an inmate suffers no deprivation of a liberty interest, and thus has no constitutional right to due process under Wolff v. McDonnell, 418 U.S. 539 (1974), unless the restraint to which he is subjected "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 115 S. Ct. at 2300; see also Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996). The Sandin Court found that an inmate who had been removed from the general population of a Hawaii prison and placed in disciplinary segregation was not exposed to "atypical and significant hardship" where he spent all but fifty minutes of his day inside his cell and, when allowed outside his cell, remained isolated and constrained by leg irons and wrist chains. See Sandin, 115 S. Ct. at 2305 (Breyer, J. dissenting).

As Judge McAuliffe recently held, placement in punitive segregation in the New Hampshire State Prison does not impose an "atypical and significant hardship" on an inmate. Hall v. Wilson, No. 94-405-M (D.N.H. March 27, 1996); cf. Raineri v. Hillsborough County, No. 93-118-JD (D.N.H. Aug. 28, 1996) (inmate sentenced to ten days in county prison's restrictive housing unit

11

days not deprived of liberty interest).  The court finds that the plaintiff's placement in punitive segregation did not deprive him of a liberty interest and, as such, did not violate his right to due process.

The court grants summary judgment to the defendants on the plaintiff's due process claims relating to the 1993 disciplinary action.

III.  Retaliation

The defendants argue that summary judgment is warranted on the plaintiff's retaliation claim against Topham because, inter alia, Topham had a legitimate basis for bringing disciplinary charges against the plaintiff.  "While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based on false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."  Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (quotation marks omitted), cert. denied, 114 S. Ct. 2684 (1994).

Here, both occasions on which the plaintiff claims to have been disciplined came as a result of his having disobeyed an order from Topham.  The plaintiff acknowledges that on both January 7, 1993, and January 20, 1993, he attempted to eat from

12

the main food line after Topham informed him that he could not do so without first having executed a waiver form. See Plaintiff's Affidavit ¶¶ 20-21; 24. As the plaintiff has acknowledged that neither disciplinary action was based on fabricated charges, his retaliation claim fails.

The court grants summary judgement to the defendants on the plaintiff's retaliation claim.


IV. Supervisory Liability

The plaintiff bases his supervisory liability claims against defendants Powell, Cunningham, and Lunderville on his allegation that these defendants were responsible for the constitutional violations of their codefendants. However, supervisory liability cannot attach unless the supervisor's actions "le[a]d inexorably to [a] constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir.) (citing Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994)), cert. denied, 116 S. Ct. 675 (1995). As the plaintiff has failed to establish an underlying constitutional violation, his supervisory liability claim fails.

The court grants summary judgment to the defendants on the plaintiff's supervisory liability claims.


13

The defendants' motion for summary judgment (document no. 31) is granted. Costs are awarded to the defendants. The clerk is ordered to close the case.

The court notes that this is the eighth civil action that the plaintiff has filed in this court since 1988. See Giordano v. Corrections Comm'r, No. 95-CV-70 (dismissed for failure to file amended complaint as ordered); Giordano v. Eltgroth, No. 94-CV-121 (dismissed as untimely); Giordano v. Cann, No. 92-CV-526 (dismissed in part; remainder consolidated with 92-CV-522); Giordano v. Corrections Comm'r, No. 92-CV-522 (dismissed for filing false in forma pauperis application); Giordano v. Prison Warden, No. 91-CV-695 (habeas corpus petition dismissed without prejudice for failure to exhaust state remedies); Giordano v. Caron, No. 91-CV-137 (dismissed in part for failure to state a claim; remainder voluntarily withdrawn); Giordano v. Courtney, No. 88-CV-102 (settled). The plaintiff is placed on notice that in the event he files any complaint in the future that is frivolous, malicious, or without merit, or that fails to state a claim, the court will review his litigation history to determine if he qualifies as a vexatious litigant who should be required to obtain leave of the court before filing any complaint. See Cok

14

v. Family Court of Rhode Island, 985 F.2d 32 (1st Cir. 1993) (per curiam).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

September 24, 1996

cc:  Vincent Giordano, pro se
     Jennifer B. Gavilondo, Esquire