Yeatts v. Design Contempo, et al.    CV-01-259-M    06/11/03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

James W. Yeatts; E. Bob
Yeatts; Fedmark, Inc.; and
Allied Contract, Inc.,
    Plaintiffs

    v.                                        Civil No. 01-259-M
                                              Opinion No. 2003 DNH 101
Design Contempo, Inc.; and
Henry Kober,
    Defendants

**O R D E R**

Plaintiffs have sued defendants for violating the implied covenant of good faith and fair dealing (Count B) and for breach of contract (Count C).[1]  Defendants have counterclaimed, asserting two counts of breach of contract.  Before the court is defendants' motion for summary judgment on Counts B and C of plaintiff's complaint (document no. 20).  Plaintiffs assert the need for discovery before an adequate objection can be filed. See FED. R. CIV. P. 56(f).  For the reasons given below, defendants' motion for summary judgment is denied.

---

[1] By order dated May 21, 2003, the Magistrate Judge granted plaintiffs' motion to withdraw Count A, for tortious interference with contractual relations.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)).

In defending against a motion for summary judgment, "[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994)). When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that

2

party's favor.'" <u>Navarro</u>, 261 F.3d at 94 (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

Taken in the light most favorable to the non-moving party, the relevant facts are as follows.

Defendant Design Contempo, Inc. ("DCI") is a furniture manufacturer. Before it became involved with plaintiffs, DCI sold furniture to the United States General Services Administration ("GSA") under a "multiple award" contract. Plaintiff Fedmark, Inc. ("Fedmark")[2] is a sales representative for furniture manufacturers. Plaintiff Allied Contract, Inc. ("Allied")[3] purchases furnishings from various manufacturers and sells them to GSA, for use on military properties, as "whole room packages."

---

[2] Fedmark is the corporate successor to the Yeatts/Brawley Group, Inc. and the Yeatts Group. For the sake of simplicity, the name "Fedmark" will be used in this order to denote both the current entity and any of its predecessors.

[3] Allied is the corporate successor to Yeatts Contract, Inc. In this order, the name "Allied" will be used to denote both the current entity and its predecessors.

In May 1993, Jim Yeatts approached Henry Kober to discuss whether DCI was interested in: (1) having Fedmark become the worldwide sales representative for DCI's multiple award contract; and (2) becoming the supplier of casegoods to be included in whole room packages sold by Allied to GSA. Those discussions bore fruit; DCI agreed to have Fedmark serve as its sales representative and also agreed to supply casegoods for inclusion in Allied's whole room packages, under a five-year agreement between Allied and GSA that went into effect in May 1996. Moreover, it is undisputed that Fedmark did, indeed, generate business for DCI, under the DCI/Fedmark agreement, and that DCI did supply some casegoods to Allied under the DCI/Allied agreement.

The full DCI/Fedmark agreement "was never committed to writing." (Def.'s Mem. of Law, Ex. 3, J. Yeatts Dep., at 178.) The DCI/Allied agreement was memorialized in a letter from Kober to Barbara Douglas of GSA in which Kober stated:

> This letter is to certify that DCI will provide Yeatts
> Contract [Allied's predecessor] with a continuous
> source of supply for all casegood items offered under
> this solicitation for the duration of the contract
> period, so long as reasonable payment terms are met.

4

(Pl.'s Mem. of Law, Ex. 10.)  Finally, a November 4, 1996, memorandum from Nelson Sweeney of DCI to Bob Yeatts established that under both the DCI/Fedmark agreement and the DCI/Allied agreement, Fedmark or Allied, as the case may be, would receive a six-percent commission "[b]eginning with new orders received after 11/01/96."  (Pl.'s Mem. of Law, Ex. 13.)

The business relationships between DCI and Fedmark and between DCI and Allied broke down shortly after they were established.  In January 1997, Allied applied for a second whole room package contract from GSA which featured casegoods from Modern Contract, one of DCI's competitors.  In June 1997, DCI restricted the geographic areas in which Fedmark and Allied were allowed to sell DCI's furniture.  In 1998, DCI began using Fedmark's sales representatives directly, without involving Fedmark, and also stopped serving as a source of supply for Allied.  And in 1999, DCI obtained its own whole room package contract from GSA.

In their complaint, plaintiffs accuse defendants of a variety of wrongdoing. In Count B, plaintiffs assert that defendants breached the implied covenant of good faith and fair dealing by: (1) hiring away several of Fedmark's key employees (Compl. ¶ 27); (2) withholding casegoods that Allied needed to fulfill its whole room package agreement with GSA; (3) securing their own whole room package contract from GSA, in direct competition with Allied (Compl. ¶ 28); and (4) delaying or failing to make commission payments and quibbling over the amount of commissions due to Fedmark and/or Allied (Compl. ¶ 29). In Count B, plaintiffs claim as damages the future commissions that Fedmark and Allied would have earned had their agreements with DCI not broken down. In Count C, plaintiffs assert that defendants breached the DCI/Fedmark agreement by failing to pay Fedmark $312,000 in commissions it had earned.

## Discussion

Defendants move for summary judgment on Counts B and C, invoking both the statute of frauds and the statute of limitations.

I.   Statute of Frauds

Defendants argue that the DCI/Allied agreement is legally unenforceable because, as plaintiffs allege, the agreement was for five years but (as conceded) was never committed to writing. Plaintiffs say the agreement was committed to writing.

It is important to bear in mind that this case involves two separate agreements, the DCI/Fedmark agreement and the DCI/Allied agreement.  (As a contract for services, the DCI/Fedmark agreement is subject to the general statute of frauds, N.H. REV. STAT. ANN. ("RSA") § 506:2, while the DCI/Allied agreement, which pertains to the sale of goods, is subject to New Hampshire's version of the Uniform Commercial Code's ("UCC") statute of frauds, RSA 382-A:2-201.)  Defendants contend that the statute of frauds bars plaintiff's action because the DCI/Allied agreement was for five years and was not committed to writing.[4]  However, viewed in the light most favorable to plaintiffs, the non-moving party, the Jim Yeatts deposition testimony about an agreement

_____

[4] In other words, defendants invoke the general statute of limitations rather than the UCC statute of limitations.  See RSA 506:2 (a writing signed by the party to be charged is required to enforce "any agreement . . . not to be performed within one year from the time of making it").

7

"never committed to writing" concerned the DCI/Fedmark agreement, not the DCI/Allied agreement. Thus, for purposes of summary judgment, the record does not support a finding that plaintiffs have conceded that the five-year DCI/Allied agreement was unwritten.

Plaintiffs argue, to the contrary, that the May 6, 1996, "continuous source of supply" letter, in conjunction with various other documents, meets the writing requirement of the UCC statute of frauds – the one that governs enforcement of the DCI/ Allied agreement. Defendants disagree, pointing out that the May 6 letter lacks a quantity term and does not constitute a valid requirements contract.

All parties agree that there has been partial performance under the DCI/Allied agreement. And, under the UCC's statute of frauds, "[a] contract which does not satisfy the [writing] requirements of [the UCC statute of frauds] but which is valid in all other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted." RSA 382-A:2-201(3)(c). Because Allied

8

received and accepted casegoods from DCI, the DCI/Allied agreement is enforceable with respect to those goods and any contractual obligations DCI may have assumed in connection with them.

Regarding the DCI/Fedmark agreement, it is not at all clear that defendants have even invoked the statute of frauds. Their motion for summary judgment does not mention that agreement, and they identify no factual basis for arguing that the DCI/Fedmark agreement would be unenforceable absent a writing, under the general statute of frauds. Moreover, to the extent plaintiffs are claiming commissions due for DCI products sold by Fedmark, relief is available, at the very least, under a theory of quantum meruit. Thus, the absence of a writing would appear not to bar Fedmark from recovering commissions it earned but was not paid.

In sum, the statute of frauds provides no basis for granting defendants' motion for summary judgment.

II.  Statute of Limitations

Defendants also argue that Counts B and C are barred by the statute of limitations.  Their argument is based on "admissions" made by both Bob and Jim Yeatts in deposition testimony, that DCI breached the DCI/Allied agreement, and perhaps the DCI/Fedmark agreement, in June 1997, when DCI limited the geographical range in which Allied and Fedmark were allowed to sell DCI's furniture. The problem with defendants' argument is that plaintiff's complaint does not identify the June 1997 market limitation as a factual basis for either Count B or Count C.  Indeed, that event is not mentioned at all in plaintiffs' complaint.  Because the complaint, rather than plaintiffs' deposition testimony, is the source of plaintiffs' claims, the "admissions" on which defendants base their statute of limitations argument are simply not relevant, and provide no basis for defendants' statute of limitations defense.

## Conclusion

For the reasons given, defendants' motion for summary judgment (document no. 20) is denied.

10

**SO ORDERED.**


                                   _____
Steven J. McAuliffe
United States District Judge

June 11, 2003

cc:  Robert H. Miller, Esq.
     Bret D. Gifford, Esq.