Craggy v. Wausau-Mosinee Paper Corp.  CV-03-499-JD  08/04/04
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Barry L. Craggy

      v.                                    Civil No. 03-499-JD
                                            Opinion No. 2004 DNH 117
Wausau-Mosinee Paper
Corporation, et al.


O R D E R


    Barry L. Craggy, proceeding pro se, has sued his union, his
former employer's parent company, and its president for vacation
pay denied him during the third year of his sick leave from Wasau
Papers of New Hampshire, Inc.[1]  The union, on one hand, and the
parent company and its president, on the other, have moved for
summary judgment.  Craggy has filed an objection to the union's
motion but not to that of the parent company and its president.


Background

    On October 19, 1999, Craggy began a period of sick leave
from his job at Wausau Papers of New Hampshire ("Wausau Papers").
His employment, which terminated on April 30, 2002, was governed
by a collective bargaining agreement between the company and his
union, Paper-Allied Industrial, Chemical and Energy Workers

_____

    [1]Craggy has not sued Wausau Papers of New Hampshire.

International Union Local 1-0061. Through the agreement, Wausau Papers recognized the union as "the collective bargaining agency for its employees in all matters pertaining to wages, hours, and working conditions." Section 6.5 of the agreement states that "[s]eniority and insurance benefits will continue up to thirty-six (36) months for any employee absent due to sickness or accident" but makes no mention of vacation pay during that period. In section 12.15, the agreement provides that

> When employees are qualified to receive paid vacation but do not have sufficient earnings for the prior year on which to base vacation pay because of . . . being on sick leave . . . they shall have their vacation pay computed at the rate of forty (40) hours times their regular straight time hourly rate . . . . Employees with two (2) or more years seniority and who are laid off, shall have their vacation pay computed at the rate of 2% of their gross annual earnings for the prior year or forty (40) hours straight time pay, whichever is greater for up to two years.

Previous versions of the collective bargaining agreement contained identical provisions.

After Wausau Papers refused to pay Craggy for vacation time during the third year of his sick leave, he enlisted the aid of the union president, Murray Rogers. Rogers asked Wausau Papers for an explanation of its treatment of Craggy. Greg Nolin, the director of human resources for Wasau Papers, answered in writing that employees were ineligible for further vacation pay after they had been out of work for more than two years, whether due to

2

a work-related injury or an unrelated malady.

The union responded by filing a charge against Wausau Papers with the National Labor Relations Board on October 11, 2002, alleging that the policy stated by Nolan amounted to "a unilateral change in conditions of employ." As a settlement of the charge, Wausau Papers offered to extend eligibility for a third year of vacation pay to employees out with work-related injuries, but not to employees out due to an unrelated accident or sickness. The company explained that it would be unfair "to pay the same benefits to those out for sickness or absenteeism as those who were out due to an injury sustained while working."

Rogers conferred with the president of the union local about the employer's proposal. They decided to accept the offer for a number of reasons, including "the absence of specific language in the Collective Bargaining Agreement dispositive of the issue" and that their "only solid evidence . . . was that of a past practice of nine years duration of paying vacation pay to employees while absent from work for only two years . . . ." Rogers acknowledges, however, "some evidence of a practice of paying vacation pay during a three year absence from work." Nevertheless, the union had little confidence that the NLRB's ruling on the unfair labor practices charge would result in any more than two year's vacation pay for employees absent for any

3

reason. Accordingly, the union evaluated the offer as "most likely to benefit the largest number of [its] members because it increased the vacation pay from two to three years for employees absent from work due to workers' compensation."

After accepting the offer, Rogers sent a letter to Craggy dated October 28, 2002. The letter stated that Rogers had investigated the company's policy of limiting vacation pay to two years and discovered that the practice had been in place since 1993. Rogers also wrote that "[i]t turns out Dick LaPoint made the change with Web Barnetts [*sic*] blessing." Barnett, the union president at that time, denies "mak[ing] any agreement with Dick LaPoint and/or Wausau Papers that would have changed the policy for vacation pay for sickness/accident employees from being eligible for three years to two years." Rogers's letter to Craggy also related the substance of the offer by Wausau Papers and stated that "it would be nearly impossible for the union to pursue the issue and win. Therefore we cannot pursue it any further." On October 29, 2002, Wausau Papers and the union signed a letter of understanding memorializing the union's acceptance of the offer and withdrawal of the charge.

Craggy brought a small claims complaint against Wausau Papers's parent company, Wausau-Mosinee Paper Corporation, and its president, Tom Howatt, in Lancaster District Court on January

4

16, 2003, seeking $4,453.40 in unpaid vacation time for the third year of his sick leave.[2] Craggy later amended his complaint to add the union on the theory that it "has failed to respond to inquiries and reports made by Plaintiff relative to the merits of this case and has otherwise acted unreasonably." The union timely removed the case to this court on the ground that Craggy's claim arose under federal law, namely, the National Labor Relations Act and the Labor Management Relations Act.

## Standard of Review

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In performing this analysis, the court must view the entire record in the light most favorable to the non-movant, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Still, "[o]n issues where

---

[2]The case was eventually transferred to Coos County Superior Court.

the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Id., 950 F.2d at 822; see also Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001). The court cannot grant a motion for summary judgment merely because the non-moving party has failed to file a response; "it must assure itself that the moving party's submission shows that 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" NESPK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).

Discussion

I.  The Union's Motion for Summary Judgment

The National Labor Relations Act empowers those "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit" as "the exclusive representatives of all the employees in such a unit for purposes of collective bargaining with respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a). With this power comes the responsibility to represent all members fairly. Marquez v. Screen Actors Guild, 525 U.S. 33, 44 (1998). A union breaches its duty of fair representation to its members only if its actions during

negotiations with an employer are arbitrary, discriminatory, or in bad faith. Torres-Matos v. St. Lawrence Garment Co., 901 F.2d 1144, 1148 (1st Cir. 1990); Condon v. Local 2944, United Steelworkers of Am., 683 F.2d 590, 594 (1st Cir. 1988). Thus, "to successfully defend against a motion for summary judgment on a duty of fair representation claim, the plaintiff must point the court to record evidence supporting any one or all of these elements." Morales-Vallellanes v. Potter, 339 F.3d 9, 15 (1st Cir. 2003) (internal quotation marks omitted).

Craggy contends that the union's settlement of his claim for vacation pay during his third year of sick leave violated its duty of representation in a number of ways. He points out that no version of the collective bargaining agreement in effect for the past fifteen years specifically states that employees absent due to a non-work-related sickness or accident are not eligible to a third year of vacation pay. As the union concluded, however, the agreement also does not expressly confer the right to a third year of vacation pay while absent, and Craggy does not argue to the contrary. Furthermore, other provisions of the agreement suggest that such a right should not be implied. For example, section 6.5 extends seniority and insurance benefits, but not vacation pay, through three years of absence for sickness or accident. Section 12.15 entitles certain employees who have

7

been laid off to a maximum of two years vacation pay.

"[A] union does not breach its duty of fair representation by rejecting an employee's interpretation of the collective bargaining agreement unless the union's interpretation is itself arbitrary or unreasonable." Bache v. Am. Tel. & Tel., 840 F.2d 283, 291 (5th Cir. 1988); see also Miller v. Postal Serv., 792 F. Supp. 4, 6 (D.N.H. 1992), aff'd, 985 F.2d 9 (1st Cir. 1993). Craggy has not explained how the union's reading of the collective bargaining agreement to exclude an absent worker's right to a third year of vacation pay fails this test. Accordingly, the union's interpretation of the agreement cannot support his claim for breach of the duty of representation.

Craggy also argues that because Barnett denies making an agreement with Wausau Papers eliminating eligibility for vacation pay beyond the second year of sick leave, there was in fact no past practice to that effect. In the alternative, he asserts that even if there were such an agreement, Barnett would have lacked the authority under the union by-laws to enter into it and it would not have survived the expiration of the collective bargaining agreement in effect at the time of its making. Craggy also claims that the union has acted in bad faith by failing "to produce a signed written agreement between [the employer] and [the union] supporting their 'past practice' . . . ".

8

These arguments rely on an apparent misunderstanding of Rogers's explanation for the union's decision to settle the unfair labor practice charge. The union did not base its decision on the existence of an actual agreement, whether written or oral, with Wausau Papers governing eligibility for vacation pay beyond the first two years of sick leave. As Rogers explains in his affidavit, the union found "solid evidence" that for the past nine years Wasau Papers had been giving vacation pay during only the first two years of an employee's absence.[3] Craggy has not come forward with any evidence disputing this point.[4] Because the collective bargaining agreement did not forbid the practice, the absence of a written agreement allowing it is irrelevant to the reasonableness of the union's decision.

The statement in the October 28, 2002, letter that "Dick LaPoint made the change with Web Barnetts [*sic*] blessing" appears to refer to the commencement of the practice in 1993 with the union's acquiescence. Barnett's affidavit does not relate what

---

[3]Although the affidavit does not explain the source of this evidence, Rogers stated in his letter to Craggy that payroll records supported the company's characterization of its practice.

[4]The bare reference in Rogers's affidavit to "some evidence of past practice of paying vacation pay during a three year absence from work" does not create a triable issue of fact for summary judgment purposes, particularly in the absence of record facts as to whether those employees who received a third year of vacation pay were absent with work-related or other injuries.

the union did in response to the change or even state whether he was aware of it. Barnett simply denies "mak[ing] any agreement." Again, however, the fact that the union did not enter into an agreement approving the practice does not mean that the company did not implement it in 1993. Barnett's affidavit therefore creates no factual issue going to whether the union acted arbitrarily by basing its decision on the undisputed fact that Wausau Papers had not given a third year of vacation pay to an absent employee since 1993. See Miller, 985 F.2d at 12 (upholding summary judgment for union where grievance withdrawn when investigation revealed that series of arbitrators had upheld practice of refusing back pay after reinstatement due to employees' failure to mitigate damages).

Finally, Craggy asserts that the terms of the settlement are arbitrary in their judgment that an "employee who is injured on the job and cannot work, possibly by his own lack of following safety rules, is more worthy of three years vacation pay than . . . [an] employee who cannot work, possibly because of a health condition he has no control over." Even when taken at face value, this argument does not so undermine the union's decision to accept the settlement as to render it arbitrary, i.e., "so far

10

outside a wide range of reasonableness as to be irrational."[5] Airline Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (internal citation omitted).

Because a union has limited resources, among other reasons, courts must afford it "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." Miller, 985 F.2d at 12 & n.3; see also Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 25 (1st Cir. 2003). Craggy has failed to come forward with any affirmative evidence that the union breached its duty of fairly representing him under this permissive standard of review. The union's motion for summary judgment is therefore granted.

II.  The Other Defendants' Motion for Summary Judgment

"Whether an employee sues his employer, his union, or both, the required proof is the same: the employer's action must have violated the terms of the collective bargaining agreement, and the union must have breached its duty of fair representation.

---

[5]Nor are the terms of the settlement discriminatory in that they provide different benefits to employees injured on the job than off. See Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1360 (10th Cir. 1994) ("Inevitable differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such terms does not make them invalid.")

Accordingly, failure of a claim against one party is tantamount to failure of the action as a whole." Miller, 792 F. Supp. at 6 (internal citation omitted); see also Morales-Vallellanes, 339 F.3d at 15 (quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983)). Assuming, without deciding, that Wausau-Mosinee Paper Corporation and its president could be liable for Wausau Paper's alleged breach of its collective bargaining agreement with the union, Craggy's claim against them meets the same fate as his claim against the union. Their motion for summary judgment is therefore granted.[6] See Morales-Vallellanes, 339 F.3d at 16-17.

## Conclusion

For the foregoing reasons, the union's motion for summary judgment (document no. 15) is GRANTED. The other defendants' motion for summary judgment (document no. 19) is also GRANTED.

---

[6]Craggy suggests in his objection to the union's motion that its settlement with Wausau Papers cannot bind him because it was not reached until after the company would have given him the third year of vacation pay. This argument ignores the fact that Craggy's grievance over the company's refusal to give him a third year of vacation pay was precisely what the union settled.

The clerk of court shall enter judgment accordingly and close the case.

    SO ORDERED.


                                      _____
                                      Joseph A. DiClerico, Jr.
                                      United States District Judge

August 4, 2004

cc:   Barry L. Craggy, pro se
      Anne G. Scheer, Esquire
      Vincent A. Wenners, Jr., Esquire