Enterasys v. Clarendon Insurance        04-CV-027-SM 08/29/06
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Enterasys Networks, Inc.,
      Plaintiff

      v.                              Civil No.  04-cv-27-SM
                                      Opinion No. 2006 DNH 098
Clarendon National Insurance Co.,
      Defendant


                        **O R D E R**


      After settling a securities class action suit by agreeing to

pay class members a combination of cash and stock, Enterasys

Networks, Inc. brought this suit against various insurance

carriers seeking coverage for the losses associated with the

settlement.  The complaint advances four causes of action: one

for declaratory judgment of coverage, pursuant to N.H. Rev. Stat.

Ann. ("RSA") 491:22 (count one); a breach of contract claim

(count two); a claim of breach of the implied duty of good faith

and fair dealing (count three); and one for violation of various

provisions of the New Hampshire Consumer Protection Act, RSA ch.

358-A (count four).  By prior order, the court granted

defendants' motion to dismiss Enterasys' claims under the

Consumer Protection Act.  Enterasys Networks, Inc. v. Gulf Ins.

Co., 364 F. Supp. 2d 28 (D.N.H. 2005).

With the exception of Clarendon National Insurance Co., all other defendant insurance carriers named in Enterasys' suit have settled. Pending before the court is Clarendon's motion for summary judgment as to all remaining claims in Enterasys' complaint. For the reasons set forth below, Clarendon's motion is granted.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

2

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

## Background

Enterasys purchased several layers of insurance coverage from various insurance companies. Lloyd's of London issued the primary policy, which provided coverage for: (1) "Directors and Officers Loss resulting from any Claim first made against the Directors and Officers during the Certificate Period for an Individual Act," (2) "Company Loss which the Company is required or permitted to pay as indemnification to any of the Directors and Officers resulting from any Claim first made against the

3

Directors and Officers during the Certificate Period for an Individual Act," and (3) "Company Loss resulting from any Claim first made against the Company during the Certificate Period for a Corporate Act." A "Claim" is defined in the primary policy to include "any civil, criminal, administrative or regulatory proceeding initiated against [Enterasys], including . . . any formal investigatory proceeding before the Securities and Exchange Commission." And, finally, an endorsement to the primary policy defines "Loss" as "damages, judgments, settlements, Costs, Charges and Expenses." The excess policies provide, with minor exceptions, that they are subject to the same insuring clauses, definitions, terms, conditions, exclusions and other provisions as those set forth in the Lloyd's primary policy.

The various layers of insurance coverage were provided by the following entities:

1. Lloyd's: Primary policy, with coverage up to $15 million (subject to a $500,000 deductible);

2. AIG: $5 million of coverage in excess of first $15 million;

3. Twin City: $10 million of coverage in excess of first $20 million;

4

4.   Lloyd's: $10 million of coverage in excess of first $30 million;

5.   Gulf: $10 million of coverage in excess of first $40 million; and

6.   Clarendon: $10 million of coverage in excess of first $50 million.

When Enterasys filed this action, none of the insurers had affirmatively acknowledged its obligation to provide coverage for the underlying consolidated class action suit. Eventually, however, Enterasys settled with most of the carriers. Lloyd's provided full coverage under the primary policy ($15 million). AIG also provided coverage to the full limits of its policy ($5 million). Twin City provided $7.5 million on its policy, with Enterasys agreeing to absorb the balance of the policy limit (i.e., $2.5 million). As to its second policy, Lloyd's provided $7 million in coverage, and Enterasys agreed to absorb the balance of the policy limit (i.e., $3 million). And, most recently, Enterasys settled with Gulf for an undisclosed amount.

What remain, then, are Enterasys' claims against Clarendon – the insurer providing coverage for up to $10 million in defined losses in excess of $50 million. Interestingly, however, the total loss Enterasys claims to have sustained amounts to less than $45 million. Thus, Clarendon's obligation to provide

5

coverage has not yet been triggered.  And, since the underlying securities litigation appears to have been resolved, it is unclear how Enterasys might incur additional covered losses. Enterasys does, however, hint at the possibility in its memorandum, noting that the SEC has yet to close its investigation into the conduct of 12 former Enterasys directors and officers.  Although Enterasys does not elaborate on the point, it is conceivable that Enterasys might one day incur covered damages that exceed $50 million, thus implicating Clarendon's policy.

**Discussion**

I.   <u>Count One – Declaratory Judgment</u>.

In support of its motion for summary judgment, Clarendon asserts that Enterasys' petition for declaratory judgment (count one) was not timely filed.  The governing state statute provides, in relevant part, that:

> No petition shall be maintained under this section to
> determine coverage of an insurance policy unless it is
> filed within 6 months after the filing of the writ,
> complaint, or other pleading initiating the action
> which gives rise to the question; provided, however,
> that the foregoing prohibition shall not apply where
> the facts giving rise to such coverage dispute are not
> known to, or reasonably discoverable by, the insurer
> until after expiration of such 6-month period; and
> provided, further, that the superior court may permit

6

the filing of such a petition after such period upon a finding that the failure to file such petition was the result of accident, mistake or misfortune and not due to neglect.

RSA ch. 491:22 III. Clarendon points out that the original class action suits underlying this coverage dispute were filed between February and April of 2002.[1] And, because Enterasys did not file this declaratory judgment action until March 10, 2003 (i.e., more than 13 months after the first class action suit), Clarendon says it is untimely.

Enterasys responds with two arguments. First, it says the six original class action suits filed in the spring of 2002 were simply "placeholder" suits, "set down by various plaintiffs' class action law firms and that the real complaint setting forth the true breadth of the action would likely come following factual developments as a result of the SEC investigation." Plaintiff's memorandum (document no. 63) at 5. According to Enterasys, the amended complaint in the consolidated action "reflected a new and materially different class action," id. at 6, which added several new defendants, expanded the class period,

---

[1] Originally, there were six separate class action suits against Enterasys arising out of the same core of operative facts. In September of 2002, those actions were consolidated into Roth v. Enterasys Networks, Inc., No. 02-cv-71-SM (D.N.H.).

and added new allegations of improper accounting practices on the part of Enterasys. Consequently, says Enterasys, the relevant 6-month limitations period did not begin to run until the filing of that amended complaint.

In support of that position, Enterasys relies on the New Hampshire Supreme Court's opinion in Binda v. Royal Ins. Co., 144 N.H. 613 (2000). In that case, the original complaint in the underlying tort action alleged that the plaintiff had been injured as a result of the insured's intentional conduct – conduct that was, unquestionably, not covered by the insured's policy. Only when the plaintiff amended his complaint to allege that he had been injured by the insured's negligent conduct, did it arguably implicate the insured's policy. Accordingly, the court concluded that the statutory limitations period applicable to the insured's declaratory judgment action against his insurer did not begin to run until the amended complaint was filed. Id. at 619 ("[A]n amended writ triggers a new six-month limitations period under RSA 491-22, III when new factual or legal allegations change the cause of action in a manner that raises a coverage issue for the first time.") (emphasis supplied).

8

Here, however, the principle articulated in <u>Binda</u> is not applicable because the so-called "placeholder" class action suits plainly alleged wrongful conduct on the part of Enterasys that implicated coverage under all of the policies, including the one issued by Clarendon. Each of those complaints alleged that Enterasys had engaged in an improper accounting scheme, fraudulent revenue recognition practices, and various "channel stuffing" activities (facilitated by the company's practice of recognizing revenue upon shipment of products to its distributors). To be sure, the amended complaint added new defendants, broadened the scope of the class period, and alleged additional wrongful conduct on the part of Enterasys that was not mentioned in the original complaints. Nevertheless, the basic causes of action remained the same and arose from the same common set of operative facts. In other words, the amended complaint in the consolidated class action did not "change the cause of action in a manner that raise[d] a coverage issue for the first time." <u>Binda</u>, 144 N.H. at 619. <u>See also</u> <u>Mottolo v. U.S. Fidelity & Guar. Co.</u>, 127 N.H. 279, 284 (1985) ("This argument [i.e., that the limitations period began to run from the filing of a subsequent indemnity action, rather than the underlying tort action] ignores the common set of operative facts from which both the indemnity action and the original suit in equity spring:

9

. . . [When the original tort action was filed] all those facts were in place, from which [the insured] could have deduced that his insurance coverage was a major issue.").

Similarly, when the original class action complaints were filed in the spring of 2002, Enterasys knew (or certainly should have known) that the allegedly wrongful conduct described in those complaints implicated coverage under all of its insurance policies, including Clarendon's. Accordingly, the six-month limitations period began to run upon the filing of the original class action suits (i.e., the so-called "placeholder" suits), not the subsequently-filed amended complaint in the consolidated class action suit.

Enterasys' second argument fares no better. It seems to claim that, until the amended complaint was filed in the consolidated class action suit, it had little reason to suspect that losses might be so substantial as to implicate coverage under Clarendon's policy (which provides coverage for losses in excess of $50 million). See Plaintiff's memorandum at 8. That argument, while having some appeal, lacks any legal basis. Enterasys has not pointed to any precedent in which the New Hampshire Supreme Court has held that the six-month statutory

10

limitations period is tolled until the insured reasonably suspects that damages might be sufficient to implicate insurance coverage (e.g., large enough to exhaust a deductible or to implicate overage policies). Rather than focusing on the amount of potential damages at issue, the court has uniformly focused on the alleged conduct of the insured and whether such conduct is arguably covered by his or her policy.

In this case, the original class action lawsuits plainly alleged conduct on the part of Enterasys and its corporate officers which implicated coverage under the Clarendon policy. Accordingly, any suit seeking a declaration of Clarendon's obligations under that policy had to be filed within six months. It was not. Consequently, Clarendon is entitled to judgment as a matter of law as to count one of Enterasys' complaint.

It is, perhaps, appropriate to note that the dismissal of Enterasys' claim for declaratory judgment does not adversely affect Enterasys in any meaningful way. Should its covered losses accumulate sufficiently to implicate Clarendon's policy, and should Clarendon wrongfully deny coverage for those losses, Enterasys is not barred from pursuing its contract breach or other legal remedies at that time.

11

> While declaratory judgment actions may be an efficient procedure for determining the scope of insurance coverage, such actions are not mandatory. As such, when a declaratory judgment action is dismissed for failure to file timely, the parties are not collaterally estopped from litigating policy coverage issues in another action because, although rulings in declaratory judgment actions are conclusive, this is only true as to any issues actually litigated by the parties and determined in the action.

Craftsbury Co. v. Assurance Co. of Am., 149 N.H. 717, 721 (2003) (citation and internal punctuation omitted).

II. Count Two - Breach of Contract

When it originally filed this action, Enterasys claimed Clarendon breached the terms of the policy by refusing to acknowledge its duty to provide coverage. In response, Clarendon raised several defenses, including the assertion that it had no obligation to provide coverage because Enterasys failed to demonstrate it had incurred sufficient covered losses to implicate Clarendon's policy. As an additional defense, Clarendon argued that because Enterasys settled some of its claims against underlying insurers for less than the full policy limits, it failed to comply with the requirement that it exhaust all underlying insurance coverage before making a claim against Clarendon. Although it has not moved to amend its complaint,

12

Enterasys now points to those interposed defenses as further support for its claim that Clarendon breached its contract (or, perhaps more accurately, that Clarendon repudiated its coverage obligations under the contract).

Even assuming Enterasys' anticipatory repudiation claim were properly before the court, it would fail as a matter of law. Merely defending against an insured's declaratory judgment action (i.e., by asserting that the insured is not entitled to coverage) does not constitute an anticipatory repudiation of the insurance contract. As the United States District Court for the Southern District of New York has noted:

> [A] claim of anticipatory repudiation is proper only where the repudiating party has indicated an unequivocal intent to forego performance in the form of a definite and final communication. The assertion of an affirmative defense does not constitute such a communication. The defendant-insurers have not indicated that they will refuse, should they be found liable to indemnify [the insured] in this action, to provide such coverage once the underlying insurance is exhausted.

Maryland Cas. Co. v. W.R. Grace & Co., 1996 WL 306372 at *1 (S.D.N.Y. June 7, 1996) (citations and internal punctuation omitted). See also LeTarte v. W. Side Dev. Group, LLC, 151 N.H. 291 (2004); Hoyt v. Horst, 105 N.H. 380 (1964).

13

As for Enterasys' breach of contract claim, it is unclear what Enterasys believes it is entitled to that Clarendon has refused to provide. It is undisputed that Enterasys has not yet incurred (and may never incur) covered losses sufficient to implicate Clarendon's policy. And, Enterasys has failed to articulate how Clarendon could have breached the terms of an insurance contract when it is plain that, at least to this point, the contract imposes no obligation on Clarendon to provide coverage. See, e.g., AT&T Wireless Services, Inc. v. Federal Ins. Co., 2006 WL 267153 at *8 (Del. Super. Jan. 31, 2006) ("When the [primary policy's] limits are exhausted, the excess policies will kick in and stand in the footsteps of the primary policy. Until then, however, there is no obligation under these policies, nor would the insurers have acted in bad faith for failing to cover counsel's fees."). Moreover, Enterasys is not claiming that Clarendon breached an obligation to provide a defense in the underlying class action litigation. In fact, its settlements with the other insurance carriers covered both its "losses" associated with settling the underlying cases, as well as the attorney's fees it incurred in connection with that litigation.

In short, because the covered losses incurred by Enterasys have not yet reached the level at which Clarendon would be

14

obligated to provide coverage under its policy (i.e., $50 million), Enterasys cannot maintain a breach of contract claim against Clarendon.  <u>See, e.g.</u>, <u>Lister v. Bankers Life & Cas. Co.</u>, 218 F. Supp. 2d 49, 52 (D.N.H. 2002) ("Logic dictates that if an insured is not entitled to the coverage in a dispute, then the insured cannot maintain an action for breach of contract – in bad faith or otherwise – for failure to provide said coverage).

III. <u>Count Three – Good Faith and Fair Dealing</u>.

Finally, Enterasys alleges that Clarendon breached the duty of good faith and fair dealing that is implicit in all New Hampshire contracts.  <u>See generally</u> <u>Centronics Corp. v. Genicom Corp.</u>, 132 N.H. 133 (1989).  That claim, too, fails as a matter of law since Enterasys has not pointed to any evidence suggesting that Clarendon acted in bad faith by, for example, engaging in acts of coercion or employing improper claim-handling practices. <u>See, e.g.</u>, <u>Lawton v. Great Southwest Fire Ins. Co.</u>, 118 N.H. 607 (1978).  Nor has it responded to Clarendon's motion for summary judgment by pointing to circumstances in which Clarendon exercised contractually-vested discretion in a manner that exceeded reasonable limits.  <u>See</u> <u>Centronics</u>, 132 N.H. at 143-45. While there is no doubt that Clarendon has (to date anyway) refused to provide coverage to Enterasys, there is also no doubt

15

that Enterasys is not yet entitled to such coverage. Consequently, to the extent Clarendon's denial of coverage can properly be viewed as "discretionary," Clarendon did not exercise such discretion unreasonably or in bad faith — its policy has not been triggered, and may never be triggered.

## Conclusion

By its own concession, Enterasys has not sustained (and might never sustain) covered losses sufficient to implicate Clarendon's policy. At best, then, its two claims arising out of Clarendon's alleged breach of the insurance contract are premature. With regard to its suit for a declaration of Clarendon's obligations under the policy (again, should that policy ever be implicated), Enterasys failed to file within the six month period provided by RSA 491:22. For the foregoing reasons, as well as those set forth in Clarendon's memoranda, Clarendon's motion for summary judgment (document no. 55) is granted.

Because Enterasys has settled (and dismissed) its claims against Gulf, Gulf's motion for summary judgment (document no. 54) and Enterasys' motion to file a sur-reply to that motion (document no. 73) are both denied as moot. The motion in limine

16

filed jointly by Gulf and Clarendon (document no. 85) is also denied as moot.  Finally, Enterasys' motion to seal (document no. 74) is granted.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 29, 2006

cc:   John C. Blessington, Esq.
      John V. Dwyer, Esq.
      John M. Edwards, Esq.
      Steven P. Wright, Esq.
      Doreen F. Connor, Esq.
      Janet R. McFadden, Esq.
      Gabriela Richeimer, Esq.
      James c. Wheat, Esq.
      John R. Gerstein, Esq.

17